## COLLINSON *v.* JACKSON and others.

*(Circuit Court, D. Oregon.* November 1, 1882.)

**1. AMENDMENT ON FINAL HEARING.**

An amendment allowed to the bill on the final hearing. stating the value of the matter in dispute to be over $500.

**2. FRAUDULENT CONVEYANCE.**

A voluntary conveyance of real property by a husband to his wife through the intervention of her father, which left him unable to pay his debts, or if made for a valuable consideration, as claimed, it being also made with the intent to hinder and delay creditors, to the knowledge of the wife, *held* fraudulent.

**3. PROMISE OF WIFE TO HUSBAND.**

At common law a husband and wife cannot contract with one another, and therefore the *promise* of the wife to release her right of dower in certain property of the husband's is not a valuable consideration for a conveyance by him to her of other property.

**4. BILL BY JUDGMENT CREDITOR TO SET ASIDE CONVEYANCE.**

The assignee of a promissory note brought an action against the maker, in this court, and had judgment therein, and then brought a suit to set aside a certain conveyance of the judgment debtor to his wife as fraudulent. *Held,* that the wife was entitled to show as a defense to the suit that the judgment was void for want of jurisdiction in the court to pronounce it.

**5. ACTION IN THE NATIONAL COURTS BY THE ASSIGNEE OF A PROMISSORY NOTE.**

The assignee of a promissory note may now sue in the national courts without reference to the citizenship of his assignor, (18 St. 470;) and if the assignment is absolutely and legally made, the motive which induced it in no way affects the right of the assignee to sue in said courts.

**6. CONVEYANCE TO HINDER, ETC., CREDITORS—GOOD BETWEEN THE PARTIES.**

A conveyance, though made to hinder, delay, or defraud creditors, is valid as between the parties thereto, and is only so far voidable as to enable a creditor who is prejudiced by it to enforce his demand against the grantor.

In Equity. Suit to set aside conveyance.

*M. W. Fechheimer* and *Henry Ach,* for plaintiff.

*T. B. Handley,* for the defendants Beauchamp and Mary Jackson.

DEADY, J. This suit is brought by Thomas Collinson, a citizen of California, against Eugene S. Jackson and Mary Jackson, his wife, and Tilden Beauchamp, her father, all citizens of Oregon, to set aside two certain conveyances of over 160 acres of real property, situated in Washington county, Oregon, as being made to hinder, delay, and defraud the creditors of said Eugene Jackson. The case was heard upon the bill, the answer of the defendants Mary Jackson and Beauchamp, and the replication thereto and the testimony. As against

the defendant Eugene S. Jackson the bill was taken for confessed for want of an answer by him thereto.

On the hearing, objection was made by counsel for the defendants that the value of the land—the matter in dispute—was not alleged in the bill, and therefore it did not appear that the court had jurisdiction of the suit. Thereupon the plaintiff moved for leave to amend his bill, so as to allege that the premises are of the value of $3,000. The hearing of the cause was then concluded, but it stood over for determination until the motion to amend should be disposed of. Afterwards, upon consideration thereof, the motion to amend was allowed. 1 Dan. Ch. P. & P. 417; Story, Eq. Pl. §§ 904, 905; *Neale* v. *Neale*, 9 Wall. 1. The defendants Beauchamp and Mary Jackson, after due notice of the allowance and filing of the amendment, having failed to answer the same, as required by the order of the court, it was duly taken for confessed against them.

Quite a number of witnesses, including the defendants, were examined before the examiner. The examination appears to have taken a wide range; and much of the testimony is irrelevant and immaterial, and that which is otherwise is often conflicting and contradictory. But the material facts of the case are easily found, and they are substantially these:

On January 1, 1878, and for some months before, the defendant Eugene S. Jackson was indebted to the firm of Hotaling & Co., liquor dealers in Portland, in the sum of $2,443.86, for "goods" before that time sold and delivered to him, while engaged in the saloon business at Amity and Independence; and being so indebted he gave his note therefor, payable to the order of said firm one day after date, with interest at 1 per centum per month. Afterwards, between January 28 and July 18, 1878, Jackson made three payments on this note, amounting to $1,322.18,—the last one, of nominally $1,000, consisting of the conveyance of his saloon at Independence, on which Hotaling & Co. had a mortgage, and for which they have not yet been able to realize $500. On April 28, 1880, Hotaling & Co. assigned this note to the plaintiff, who brought an action thereon against the defendant Eugene S. Jackson in this court, and on May 26th thereafter obtained judgment therein, for want of an answer, for the sum of $1,626.05 and $60.50 costs. On December 29, 1877, Jackson conveyed the premises in controversy to his wife's father, the defendant Beauchamp, for the nominal consideration of $1,000, and in trust that he would convey the same to the defendant Mary Jackson, which he did on the same day for the nominal consideration of $5. At the date of these conveyances Jackson was in failing circumstances, and his assets, apart from this property, were not sufficient to pay the debt of Hotaling & Co. They consisted of an interest in his father's estate, being the undivided one-seventh of certain real property in Washington county, which he sold on November 21, 1878, to his brother, William R. Jackson, for $1,000; the saloon property at Independence,

worth not to exceed $500; the stock in the saloon at Amity, worth it may be, $400; and from $1,000 to $1,500 of saloon accounts, worth next to nothing, and certainly not more than 25 cents on the dollar, $315,—making in all, at the very highest estimate, $2,215; out of which it is not probable that more than $1,200 could have been made on execution.

By the laws of this state (Or. Laws, p. 523, §§ 51, 55) it is provided, as in chapter 5 of 13 Eliz., that every conveyance of any estate in lands "made with the intent to hinder, delay, or defraud creditors of their * * * demands, * * * as against the person so hindered, delayed, or defrauded, shall be void," except in the case of a purchaser for a valuable consideration, without notice of the fraud or fraudulent intent.

Upon the facts stated, the reasonable inference is that the conveyance to the wife through the father-in-law was made with the intent to hinder, delay, and defraud the creditors of Jackson; and neither the wife nor father-in-law being purchasers for a valuable consideration, it is declared void by the statute as against such creditors. Bump, Fraud. Conv. 267. But, in addition to this, there can be no doubt from the evidence that Jackson actually intended, by this conveyance to his wife, to put the property beyond the reach of his creditors, and so he and his attorney now admit and testify; and that she was fully aware of his purpose and actively participated in it. True, she denies this now, but without reason or probability. Besides, the transaction is covered with the usual badges of fraud. The conveyance to Beauchamp, made upon a mere nominal consideration furnished by the grantor, falsely recites that the consideration was $1,000; and the consideration of $5, upon which the conveyance to the wife purports to have been made, was also furnished her for the occasion by her husband. The pains taken to disguise the true nature of the transaction is only explainable on the theory that all parties to it were aware that a fraud was intended. The two conveyances, although made at the same time and place—Beauchamp's house—were designedly witnessed by different persons, and acknowledged before different officers, and filed for record on different days, so as to create the impression that they were independent and unrelated acts, and not the component parts of a preconcerted scheme to put the husband's property into his wife's name with the intent to prevent his creditors from reaching the same, as was the fact.

In addition to these there is the suspicious circumstance that the conveyances were made to near relations—the father-in-law and wife of the grantor. Bump, Fraud. Conv. 54. After this property was

thus conveyed to the wife,—in February, 1880,—she left her husband and has since obtained a divorce from him; and this circumstance seems to have prompted him to disclose the true nature of the transaction to his creditors, in the hope, as he testifies, that if he cannot have the benefit of the property himself by holding it in the name of a wife, it may go to the payment of his debts. The defendant Mary Jackson joined in the conveyance by her husband of his interest in his father's estate and that of the saloon property at Independence, and thereby relinquished her right of dower therein; and she testifies that when the premises in question were conveyed to her, that it was done in pursuance of a verbal agreement then made between herself and husband, by which she promised, when thereafter requested, to join him in the conveyances of the other property above mentioned. And it is now claimed that this *promise* to relinquish her dower was a sufficient consideration to support the conveyance to her.

The first answer to this proposition is that the evidence does not support it; and the second is that the promise, if proven, is void, because made by a wife to her husband, (*Pittman* v. *Pittman*, 4 Or. 299; *Elfelt* v. *Hinch*, 5 Or. 257,) and because it was not in writing. Code of Civil Proc. § 775, sub. 6. And being a void promise, it could not be enforced, and therefore it was not a valuable consideration moving from the grantee at the time of the conveyance, although it was subsequently performed. Bump, Fraud. Conv. 220, 222, 225. In *Howe* v. *Wildes*, 34 Me. 570, it was held that the note of a *feme covert* was not a valuable consideration although paid when due, and that, therefore, a conveyance by a son to his mother upon the consideration of her note was voluntary and void as against his creditors. But the conclusive answer to this claim is that, let the consideration for the conveyance to the wife be ever so valuable, she took it with full knowledge of her husband's intent to thereby hinder and delay if not defraud his creditors, and was therefore a party thereto. Again, if this conveyance had been made in consideration of an actual release of the right of dower in property worth not to exceed $1,500, the gross inadequacy of price would itself be a badge of fraud. The property conveyed is admitted to be worth not less than $3,000, and the husband at the date of the conveyance was only about 32 years of age. His expectation of life was about 30 years, and the wife's but little more, if any. The value, then, of this right of dower at the date of the conveyance was very trifling compared with the value of the property conveyed, and is hardly worth estimating. The

net income of $500 for a few years, receivable 26 years hence, and discounted to its present value, would nearly represent the alleged consideration for the conveyance.

But the defendant Mary Jackson further contends, by an allegation in her answer and in the argument, that this bill cannot be maintained, because, as she alleges, the judgment which it is brought in aid of is void for want of jurisdiction in the court that gave it over the subject-matter, in that the parties to whom the note was made could not maintain an action upon it in this court, and assigned it, if at all, to "the complainant herein for the purpose of bringing such action in this court." Without stopping to determine whether this allegation is not a plea in abatement which is waived by an answer to the merits, (*Dowell* v. *Cardwell*, 4 Sawy. 230,) the question raised by it will be considered. But before doing so it is proper to dispose of the point made by the plaintiff that the defendant cannot attack this judgment collaterally. I think she can; and that the case falls within the rule that when the right of a third person may be affected collaterally by a judgment procured by fraud or collusion of the parties thereto, or which for any reason is erroneous and void, and he cannot bring a writ of error to reverse the same, he may allege and prove or show its invalidity in any proceeding in which it is sought to be used to his prejudice. Freeman, Judgm. §§ 335–7. The evidence upon this point is defective. It only appears therefrom that the firm of Hotaling & Co. consists of two persons,—one a resident of San Francisco and the other of Portland,—but what the nationality or citizenship of either of them is does not otherwise or further appear. But it is altogether immaterial whether the plaintiff's assignor could have maintained an action upon this note or not. True, under section 11 of the judiciary act of 1789, (1 St. 78,) the assignee of a contract, except a foreign bill of exchange, could not sue in the national courts unless the assignor could have done so. But under section 1 of the judiciary act of 1875, (18 St. 470,) this restriction upon the right of an assignee of a promissory note has been removed, and he may now sue in this court without reference to the citizenship of his assignor. Nor is it material, if true, that the assignment to the plaintiff was made for the purpose or with a view of enabling him to sue on the note in this court. If the assignment was actually made and the interest of the assignor absolutely vested in the assignee without any agreement or understanding to return it or account to the assignor for the proceeds, the motive or purpose of

the latter in making the assignment does not affect the right of the assignee to sue in this court. This is well established, both upon reason and authority. *Newby* v. *Or. Central Ry. Co.* 1 Sawy. 63; *De Laveaga* v. *Williams,* 5 Sawy. 573; *Hoyt* v. *Wright,* 4 FED. REP. 168; *Marion* v. *Ellis,* 10 FED. REP. 410.

In *Newby* v. *Or. Central Ry. Co. supra,* in considering a similar objection to the plaintiff's right to sue herein, as the assignee of two of the defendant's bonds, the court said: "If it appears that the complainant has the legal title to or interest in these bonds, then this plea is insufficient. They are payable to bearer, and the title to them passes by delivery, unless the contrary is shown. The motive with which they were delivered to the complainant or he received them makes no difference in this respect. Parties have a clear right to become the owners of property, real or personal, by purchase or gift, for the express purpose of maintaining a suit in this court concerning the same."

And in *De Laveaga* v. *Williams, supra,* in which there was a plea in abatement that the plaintiff was not the actual owner of the premises sued for, and that the conveyance to him was merely colorable, to give the court jurisdiction, Mr. Justice FIELD said:

"There is no doubt, that the sole object of the deed to the complainant was to give this court jurisdiction, and that the grantor has borne and still bears the expenses of the suit. But neither of these facts renders the deed inoperative to transfer the title. The defendants are not in a position to question the right of the grantor to give away the property if he chooses to do so. And the court will not, at the suggestion of a stranger to the title, inquire into the motives which induced the grantor to part with his interest. It is sufficient that the instrument executed is valid in law, and that the grantee is of the class entitled under the laws of congress to proceed in the federal courts for the protection of his rights. It is only when the conveyance is executed, to give the court jurisdiction, and is accompanied with an agreement to retransfer the property at the request of the grantor upon the termination of the litigation, that the proceeding will be treated as a fraud upon the court. Such was the case of *Barney* v. *Baltimore City,* upon which the defendants rely. 6 Wall. 280. Here there was no such agreement, and it will be optional with the complainant to retransfer or retain the property."

The allegation or plea, therefore, in this case is absolutely immaterial, for it does not go so far as to aver that the assignment was not *bona fide,* and only colorable, but simply that the motive in making it was to give this court jurisdiction.

In the evidence there is an attempt to prove this, but it is insufficient. The circumstances relied on as showing that the assignment was not absolute and unqualified are that the consideration therefor

was merely nominal—one dollar—and that the assignor paid the expenses of the suit. But these are not inconsistent with an actual transfer, and they signify nothing when taken in connection with the testimony of the assignor and assignee, who both state that the transfer was absolute, and that there is no understanding or agreement by which the assignor is to have any of the contents of the note or the fruits of the litigation. It follows that the court had jurisdiction of the action on the note, and that the judgment therein is valid and binding on all the defendants herein for the purposes of this suit. The plaintiff is therefore entitled to have the conveyances of December 29, 1877, to the defendants Beauchamp and Mary Jackson, so far as they hinder and delay him from obtaining satisfaction of his judgment, set aside and held for naught. But it is a mistake to suppose that the property, or any portion of it remaining after the satisfaction of the judgment, will revert to the husband. As between him and his wife, the conveyances are good and vest the title in her. They are not void, but only voidable at the suit of a creditor who is thereby prevented from the collection of his debt, and then only so far as to enable him to collect it. *In re Estes,* 7 Sawy. 460. If there is any surplus of the property, or the proceeds thereof, after satisfying the judgment of the plaintiff and the costs of this suit, as it is probable there will be, it belongs to the wife.

A decree will be entered setting aside the conveyances as to the plaintiff, and directing the master to sell the property, or so much thereof as may be necessary to satisfy the plaintiff's judgment and the costs of this suit and the execution of the decree herein, and pay the remainder of the proceeds, if any, to the defendant Mary Jackson.