WAGENER & CO. v. MARS.

1. Where exceptions to the admission of evidence are noted on the master's minutes, but are not renewed in the exceptions filed to his report, nor considered in the Circuit decree, the judge's failure to sustain them cannot properly be made a ground of appeal to this court.
2. In action to cancel deeds for fraud, evidence may be received in behalf of plaintiffs as to other deeds of defendants—as to their tax returns—as to other lands owned by them—as to assignments by them of agricultural liens and other papers—and as to their purchases of property.
3. A party may introduce testimony to show a state of facts different from that testified to by one of his witnesses.
4. Findings of fact deliberately made by the master and unqualifiedly concurred in by the Circuit Judge will not be overruled unless error in such findings is patent and overwhelming.
5. Deeds executed without a valuable consideration, and for the purpose of defeating, delaying, and hindering creditors of the grantor, is void as to them.
6. A Court of Equity, upon vacating a deed for fraud, may decree that the land shall be sold and the proceeds applied to the debts of the grantor.
7. In action by judgment creditors in behalf of themselves and other creditors to cancel a deed for fraud, the attorneys for plaintiffs are entitled to a fee out of the fund realized to the creditors, for services successfully rendered, but not so as to diminish the balance going to the defendants after the creditors are satisfied.

Before HUDSON, J., Abbeville, October, 1886.

This was an action by F. W. Wagener & Co., judgment creditors of W. W. Mars, against said W. W. Mars, T. W. Mars, and Lucy J. Mars, to vacate certain deeds for fraud. The case was referred to J. C. Klugh, Esq., master, who reported as follows:

It was referred to me in this case to take testimony and report upon all questions of law and fact submitted. The action is brought to set aside two conveyances, the one from W. W. Mars to T. W. Mars, and the other from T. W. Mars, of the same property, to Lucy J. Mars, who is the wife of W. W. Mars; and to subject said property to the payment of the debts of W. W. Mars. The first of these conveyances, that from W. W. to T. W. Mars, was made on Sept. 24, 1881. The property conveyed was

one-half interest in 900 acres of land known as the homestead, a tract of 75 acres, known as the Bellott tract, and one-fourth interest in 160 acres, known as the Covin tract; the alleged consideration was $2,500. At the time this conveyance was made W. W. Mars and T. W. Mars were jointly indebted to the plaintiffs on a note for $3,000, dated February 9, 1880, and due Dec. 1, 1880, and W. W. Mars was also heavily indebted to various other parties, many of whom had already brought suit on their demands, and got judgments against him at the October term of the court following. Said W. W. Mars had for several years been in business as a merchant in a country store. The above mentioned conveyance left him without a dollar of property, real or personal, so far as appears from his sworn returns to the county auditor.

The question presented is, was this conveyance made with the intent to defeat, delay, and hinder the creditors of W. W. Mars? I think there can be scarcely a doubt that it was. Almost all the more prominent badges of fraud are apparent to the slightest investigation of the circumstances attending it. The grantor was heavily in debt; his creditors were pressing him hard; the plaintiffs, Wagener & Co., themselves brought suit against him in four days after he made the transfer of his property, showing that they must have been urgent for payment of their debt even before. The property conveyed embraced his entire estate; his store having been burned several months previously. The alleged consideration, $2,500, can scarcely be called an adequate price for the property. There were nearly 600 acres of land lying on Little River, on the Savannah side of the county, and probably worth at least twice as much as the price named.

Besides, I think it extremely doubtful whether any consideration whatsoever was paid. The plaintiffs have produced such testimony as it was possible in the nature of the case for them to produce, to show that the consideration was nominal. They have shown that no money was passed when the deed was executed. The defendants have had every opportunity, as they must be considered to have every reason and inducement, to show that the price paid was *bona fide*. They could have shown it by their own oaths as plaintiffs' witnesses without fear of contradiction,

yet they have been as silent as the grave on this point. I regard this as a strong circumstance in support of this allegation of the complaint. Even if the consideration could be held to be real and sufficient, the transaction must still be held void, for T. W. Mars knew perfectly well W. W. Mars's condition financially, and that he was stripping himself of every vestige of property available for his creditors. And the sequel shows that it was a cunning device of these two men, and that T. W. Mars kept the faith that was reposed in him; for in less than a year this very property found its way into the hands of W. W. Mars's wife by a transaction strikingly like the former one.

We come now to the conveyance from T. W. Mars to Mrs. Lucy J. Mars. It is dated Sept. 4, 1882, and conveys the same lands, described in the very same terms, and for the same consideration as that named in the deed from W. W. to T. W. Mars. Mrs. Mars sets up the defence that she is a *bona fide* purchaser for value without notice or knowledge of fraud or intent to hinder, delay, defeat, or defraud the creditors of W. W. Mars. I do not see how her defence can be sustained. She offers no testimony in support of it save what may be gathered from her own statements while testifying as a witness for plaintiffs. As to the consideration, her statement is that she paid $2,500; that she borrowed the money from her mother; that she did not tell her mother what she wanted with $2,500, but that it was borrowed to pay for this land. It does not appear that she gave any security for the loan. Mrs. Mars's testimony is so indefinite, her recollections are so vague, and her memory confessedly so unreliable as to dates, amounts, quantities, etc., that I confess I receive this story about the loan with great reserve. It seems to me at variance with our common experience amongst people of limited means, that a young wife who has near $5,000 in cash at her marriage, should borrow, in less than two years after her marriage, $2,500 from her parent, and make no explanation of her disposition of her own fortune, nor even tell what the loan was to be used for, and give no security for the money.

After weighing all the circumstances and the testimony carefully, I am strongly inclined to believe that Mrs. Mars is mistaken as to the time or the amount which she obtained, or both.

Immediately after her marriage Mrs. Mars began an extensive and varied course of dealing with both of her co defendants. It is reasonable to suppose that in her intimate associations and relations with them she learned much of their methods of dealing, their plans, intentions, purposes, and of the results aimed at or achieved by them. A person of half the intelligence and shrewdness which she has exhibited in the progress of this case, would have done so. Yet she claims to have known nothing of their business, of their indebtedness, or of the suits against them. She is especially and profoundly ignorant of her husband's affairs. She does not even know what property he ever owned, nor that she bought from T. W. Mars the very land which W. W. Mars had owned less than a year before. She only knows that her husband is now entirely divested of any estate of any kind.

Such ignorance would be lamentable if it was not directly contradicted by the facts; for, in the first place, she produces in evidence a deed from T. W. Mars to herself, dated February 4, 1881, conveying to her a half interest in the home place of 900 acres, and reciting that W. W. Mars owned the other half. This last half was the one conveyed to her by T. W. Mars in the deed of September 4, 1882, it having previously been conveyed to him in the deed of September 24, 1881, by W. W. Mars, so that she and her husband were co-tenants of the home place in 1881, yet she cultivated her half of it and did not know he cultivated the other half, nor who owned it. Again, the deed of W. W. to T. W. Mars, dated September 24, 1881, must have gone into her possession as part of her chain of title, or even if it did not, it was on record and she presumably, as a prudent person, satisfied herself as to the extent of T. W. Mars's interest and power to convey. She admits that at some indefinite period she knew T. W. Mars was indebted and was being sued. This may have been in 1882 as well as any other time, so far as appears from her testimony.

The impression made upon my mind from Mrs. Mars's testimony is that she was extremely cautious in her disclosures and unwilling to say anything that might betray her co-defendants or commit herself in any way to a knowledge of their designs. I am satisfied from the evidence that she did know enough of their

intentions to make her a party to them. Even if she had not actual knowledge, which I hold that she must have had and did have, the circumstances were sufficient to put any person of the smallest degree of prudence and judgment on the inquiry which would have led to an easy detection of the whole scheme.

I find as matters of fact: 1. That the conveyance by W. W. Mars to T. W. Mars of 24th September, 1881, was without a valuable consideration. 2. That said conveyance was made with a fraudulent intent in both parties to defeat, delay, and hinder the creditors of W. W. Mars. 3. That the conveyance by T. W. Mars to Lucy J. Mars was without a valuable consideration. 4. That said conveyance was made with the intent on the part of both parties to further defeat, delay, and hinder the creditors of W. W. Mars.

As conclusions of law: 1. That the conveyance by W. W. Mars of 24th September, 1881, was void. 2. That the conveyance by T. W. Mars to Lucy J. Mars of 4th September, 1882, was void. 3. That plaintiffs are entitled to judgment as prayed for in their complaint.

The Circuit decree was as follows :

This cause came on to be heard on the exceptions to the master's report by the defendants. After hearing the pleadings, testimony, and report of the master, and the argument of counsel, and after a careful consideration of the testimony, I am satisfied that the master has arrived at a correct conclusion on the facts and the law, and that all the circumstances connected with the conveyances assailed, as ascertained from the testimony, clearly indicated the purpose of the defendants to defeat and hinder the creditors of the defendant, W. W. Mars, in the collection of their debts—and I concur with the master in his findings of law and fact.

It is therefore ordered, adjudged, and decreed, that the report of the master be confirmed and the exceptions of the defendants overruled.

It is further ordered and decreed, that the conveyances of the real estate described in the pleadings from W. W. Mars to T. W. Mars and from T. W. Mars, of the same lands, to Lucy J. Mars, wife of the said W. W. Mars, be declared fraudulent and void as to the creditors of said W. W. Mars, and that the said convey-

ances be delivered up by the defendants, or either one of them having possession thereof, to the master of this court, to be by him cancelled ; and that the said several tracts of land, described in the pleadings and in said conveyances referred to, be sold by the master of this court; * * * that from the proceeds of sale, after payment of the costs and expenses of sale and any taxes or assessments thereon, the master do pay to the parties entitled respectively the costs of this proceeding to be taxed by the clerk of this court, and hold the net proceeds of sale subject to the further order of this court; and that the master of this court do ascertain and report the encumbrances by judgment and execution against the said W. W. Mars, and report the amounts due thereon, with their respective priorities, and that he give notice by publication for two weeks in one or more newspapers of the county for creditors claiming to hold such liens to present and prove the same before him on a certain day to be named.

It is further ordered and decreed, that it be referred to the master of this court to take testimony and report a suitable fee to be paid to the attorneys of the plaintiffs in this suit out of the fund coming into his hands from the proceeds of the sale of the lands made under this decree.

The defendants appealed upon the following exceptions, but the first six subdivisions of exception I. were not embraced in the list of exceptions taken to the master's report.

I. Because it was error in his honor to overrule the exceptions of the defendants to the rulings and report of the master in said case, which exceptions charged that the said master erred in the following particulars: 1. In admitting evidence as to any other deeds but the ones mentioned in the complaint. 2. In admitting evidence as to the tax returns of defendants. 3. In admitting parol testimony as to the lands owned by defendants, the deeds or other instruments under which they held them being the best evidence as to their interest and the number of acres. 4. In admitting testimony as to the assignment to plaintiffs by defendant, W. W. Mars, of agricultural liens and other papers. 5. In admitting testimony as to the purchase of a note from W. W. Mars by Mrs. Lucy J. Mars. 6. In admitting testimony offered by plaintiffs as to returns of Mrs. R. A. Moore, as guardian, to

impeach the testimony of their own witness, Mrs. Lucy J. Mars.[1] [The other subdivisions raise questions of fact.]

II. Because it was error in his honor as matter of law not only to disregard the testimony of plaintiffs' witnesses, but to draw from that testimony a conclusion directly opposite to that which they swore to.

III. Because it was error in his honor to order the land to be sold by the master, his power being exhausted by adjudging the deeds fraudulent, and ordering the defendants to deliver them up to be cancelled.

IV. Because it was error in his honor to order the master to take testimony as to a suitable fee to be paid to plaintiffs' attorneys, and to direct that such fee be paid out of the proceeds of sale of the land.

V. Because his honor could not lawfully do more than to place the parties in the position they would have occupied if no deed had been made, and to leave the plaintiffs to their remedies at law.

VI. Because the plaintiffs had full power and authority to enforce their execution, and it was error in his honor to attempt to give them higher rights than they have under their judgment.

VII. The defendant, Lucy J. Mars, further appeals on the following grounds: 1. Because his honor erred in holding that she has no higher right in the matter than her vendor, and that if he acquired his deed by fraud, she cannot get a better title than he had, even if she was a purchaser for valuable consideration, and without any notice of the fraudulent character of his deed. 2. Because the evidence offered by plaintiffs shows that this defendant is a purchaser for value and without notice, and she submits that her title is good, even if T. W. Mars acquired his by fraud.

VIII. Because said judgment is contrary to law and the evidence.

*Messrs. Graydon & Graydon,* for appellants.

*Messrs. Parker & McGowan,* contra.

---

[1] Plaintiffs disclaimed any intention of impeaching Mrs. Mars's testimony, and the returns were received by the master only as tending to show a state of facts different from that testified to by Mrs. Mars.—REPORTER.

July 4, 1887.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    The action below was brought
by the plaintiffs, judgment creditors of the defendant, Walter W.
Mars, to set aside two deeds, one from the said Walter W. Mars
to Thomas W. Mars conveying certain lands, and the other from
Thomas W. Mars to the defendant, Lucy J. Mars, the wife of
the said Walter, conveying the same lands.    The first deed is
dated September 24, 1881, and the second September 4, 1882,
and the ground of attack was that they were executed without
consideration, and for the purpose of defeating, delaying, and
hindering the creditors of the said W. W. Mars, and were collu-
sive and fraudulent and that the said W. W. Mars had no other
visible property within reach of his creditors.

The master sustained the allegations of the complaint, finding
as matters of fact, that the conveyance from W. W. Mars to
Thomas W. Mars, was without a valuable consideration, and was
made with a fraudulent intent in both parties to defeat, delay,
and hinder creditors, and also the same as to the second deed
from Thomas W. to Lucy J., and he adjudged said deeds void.
His honor, Judge Hudson, heard this report upon numerous
exceptions, all of which he overruled, and confirmed the report,
decreeing that the deeds be delivered up and cancelled, and that
the lands be sold.    He further ordered that it be referred to the
master to report a suitable fee to be paid to the plaintiffs' attor-
neys out of the proceeds of the sale, &c., &c.

Among the exceptions upon appeal here are several alleging
error to the Circuit Judge in sustaining the master in allowing
certain incompetent testimony as alleged to be introduced before
him.    See subdivisions from 1 to 6, inclusive, under the 1st gen-
eral exception.    It does appear in the report of the master that
the defendants objected to this testimony when offered, but no
exception was carried up to the Circuit Judge on that account;
nor does it appear in the decree that his honor made any special
ruling thereon.    He overruled the exceptions filed and confirmed
the report.    Under these circumstances we cannot regard the
exceptions referred to as before us.    Not having been relied upon
in the exceptions to the master's report, and therefore no ruling
demanded thereon from the Circuit Judge, they must be consid-

ered as abandoned. But even if they were properly before us, we are satisfied, from the examination which we have necessarily given to the report and decree, that they are untenable.

The important and vital questions in the appeal are questions of fact, to wit, whether these deeds were without consideration, and were executed, as alleged, for the purpose of defeating, delaying, and hindering the creditors of W. W. Mars, the defendants all colluding and conspiring to that end. If these facts are affirmed, as found both by the master and the Circuit Judge, the legal conclusion of invalidity follows beyond doubt. Now, it should be a very clear case, indeed, for this court to overrule the findings of fact below, first reported by the master, and then unqualifiedly concurred in and sustained by the Circuit Judge. With an intelligent and competent master, as the one here seems to be, accustomed and experienced in sifting testimony, with the witnesses before him, and with full time to deliberate and consider, and naturally disinclined, doubtless, to disregard the evidence of his neighbors and fellow-citizens, if it could be avoided consistently with his duty, his findings of fact of the character here especially, come with great force before the court, and when they have been concurred in by the Circuit Judge, they ought not and cannot be overruled, unless the error is patent and overwhelming. It is needless to go over the testimony ; sufficient to say, that we have examined it thoroughly, and we do not feel warranted in saying that we find such an error as that suggested here. The findings of fact, therefore, are affirmed.

The deeds in question, then, having been executed without a valuable consideration, and for the purpose of defeating, delaying, and hindering the creditors of W. W. Mars, which was concurred in by all of the defendants, the plaintiffs being judgment creditors of the said W. W. Mars, and there being no other visible property out of which they can make their debt, it follows, as said above, that said deeds must be delivered up and cancelled as void.

The two remaining questions are, ·first, did his honor err in directing a sale of the lands after declaring the deeds void ? and 2nd, was his order as to the fee for appellants' counsel erroneous ?

On the principle that where the Court of Equity has rightfully

assumed jurisdiction of a cause, &c., it may proceed to do full and complete justice by directing a sale of the property, the practice has prevailed in this State as well as elsewhere in cases like this (creditors' bill to set aside fraudulent conveyances of land), to complete the matter by ordering a sale in the event of vacating the deeds.  See *Gracey* v. *Davis*, 3 *Strob. Eq.*, 57, 51 *A. D.*, 663; *McMeekin* v. *Edmonds*, 1 *Hill Ch.*, 293, 26 *A. D.*, 203; *Fuller* v. *Anderson*, *McMull. Eq.*, 33, 36 *A. D.*, 290; *Godbold* v. *Lambert*, 8 *Rich. Eq.*, 264, 70 *A. D.*, 192; *Chatauqua County Bank* v. *White* (6 *N. Y.*, 236), 2 *Selden*, 253, 57 *A. D.*, 442; *Bump Fraud. Con.*, 534.  In the face of this unquestioned practice, we cannot say that his honor erred in this particular.

As to the fee.  This is a creditors' bill, or in its nature, and the proceeds of the sale are directed by the decree to be held subject to the further order of the court, the master in the meantime to report encumbrances and liens, &c.  We think, in so far as the proceeds may be applied to the creditors who may come in and share the result of the plaintiffs' action, a fee for respondents' counsel may be paid therefrom.  But should the lands sell for more than enough to pay said claims, the balance, which would belong to the defendants, should not be diminished by any portion of said fee.  In other words, the fee should be deducted from the amount of proceeds applied to the creditors' claims.  It may be that there was no doubt below, that it would take the entire proceeds of the prospective sale to meet the demands, and therefore the order made was not objectionable.  With that understanding, this portion of the decree is affirmed also.  But should it turn out otherwise, then this portion of the decree should be enforced as above suggested.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, as above indicated.