PARK *et al. vs.* BATTEY & HAMILTONS *et al.*

<div style="float:right">80  353<br>118  735</div>

1. A conveyance of realty and personalty from husband to wife, made in consideration of love and affection, and that she will pay certain preferred debts and maintain him during his life, is fraudulent as against creditors unprovided for, he retaining nothing with which to satisfy their demands, and the value of the property embraced in the conveyance being much more than the amount of the preferred debts.

2. One of the creditors provided for, after being paid in full out of the proceeds of a private sale of a part of the realty, having given credit to the wife and taken from her mortgages on the residue of the realty to secure payment·of her debt, is, *prima facie*, chargeable with notice that her title might be fraudulent. The facts would suggest inquiry.

3. The judgment is reversed in so far only as·a sale of the real estate under the mortgage *fi. fa.* is concerned. Let the injunction be granted restraining such sale until a final decree is rendered on the bill.

January 20, 1888.

BLECKLEY, Chief Justice.

[This was a bill, filed by Mrs. Park ˙and Mrs. Lewis, in the superior court of Greene county, against Thos. N. Poullain, his wife, Mildred P., and Jos. H. English, sheriff, all of that county, and against Battey & Hamiltons and J. C. Moore, sheriff, all of Floyd county, alleging, in brief, as follows: On August 8, 1879, the complainants filed their bill against Thos. N. Poullain, who was their guardian. Their cause of action was long before that time. On November 6, 1886, they obtained a final decree against him, and execution issued thereon. On March 4, 1879, the house and lot of Thos. N. in Greenesboro was sold by the sheriff, under a *fi. fa.* in favor of the Bank of the University against T. N: Poullain *et al.*, to Mrs. Mildred P. Poullain, who bid off the property at $1,000. It was worth $3,000. The sheriff made her a deed, and at the same time, the *fi. fa.* was transferred to her in consideration of the amount due thereon. The money she paid in both instances was

v 80-23

money of Thos. N., and he and she were colluding to defraud his creditors.  On August 11, 1879, Thos. N. made and delivered to Mildred P. two conveyances of realty and personalty, in consideration of his natural love and affection for her, and that she would maintian him during his life, and would pay off two debts due to Berrys & Co., of Floyd county, one by mortgage in their favor and the other by execution transferred to them, both amounting to over $12,000; and covenanting that, should the realty be sold under either of the encumbrances, the proceeds, after paying them, should vest in Mildred P.  These instruments covered the entire property of Thos. N., and the transfer was made to put it beyond the reach of his creditors, especially complainants.  Mildred P. married Thos. N. about 1874.  She was then without property and has since acquired none.  But she pretends to own that described in the two conveyances, returning it for taxes, etc. On January 14, 1880, she conveyed to C. P. Morton part of the realty for $16,000, two-thirds of which she paid on the debts mentioned in the deed, and appropriated the balance to her own use.  The rest of the land has been managed in her name.  On February 27, 1886, she mortgaged to Battey & Hamiltons all of the last mentioned land to secure a debt of $5,000; and on December 9, 1886, she made another mortgage on the same property to the same firm to secure a debt of about $6,000.  That firm, when the mortgages were delivered to them, had full knowledge of all the facts invalidating the titles of Mildred P.  They foreclosed the mortgages in Floyd superior court, and *fi.* *fas.* issuing therefrom have been levied on the land, which is to be sold by the sheriff, unless such sale be restrained. The existence of these mortgages and *fi. fas.* was discovered by complainants only within the past few days.  The land is worth fourteen or fifteen thousand dollars; but if sold under the *fi. fas.*, it will hardly bring two-thirds of that amount, and after satisfying the *fi. fas.*, the balance will go into the hands of Mildred P.; and thus all the

property of Thos. N., subject to his debts, except the house
and lot in Greenesboro, and the personalty he transferred
to Mildred P., will be placed beyond the power of levy.
On information and belief, it is charged that Battey &
Hamiltons received from Mildred P. $5,000 worth of cotton
raised on the real estate, the proceeds thereof to be cred-
ited on the mortgage *fi. fas.*, but by collusion the credit has
not been made. The cotton was really the property of Thos.
N., and should be applied to his debts. The sheriff of Floyd
county raised $1,000 by sale, under a mortgage *fi. fa.* in
favor of Battey & Hamiltons against Mildred P., of the
personalty transferred to her by Thos. N., and this sum is
impounded in the sheriff's hands by claims of other cred-
itors of Mildred P. Part of this personalty was bought,
as complainants are informed, by Battey & Hamiltons,
who immediately returned it to Mildred P. or her agent,
thereby colluding with her to place all the property of her
husband beyond the reach of his creditors. The instru-
ments of conveyance mentioned were void, because made
to delay, hinder and defraud creditors of Thos. N.; because,
the property being much more in value than the amount
of the debts to be paid, as stipulated in the conveyances,
the provision that the surplus should go to Mildred P. was
no preference of a creditor, but the gift of an insolvent
debtor; because the instruments were the gift of an in-
solvent debtor, left him nothing to pay his debts, reserved
a trust and benefit to himself, and show an illegal consid-
eration in the assumption of the debts of the husband by
his wife. The prayers are very specific, and ask for in-
junction, cancellation and decree in complainants' favor,
etc.

Brown, administrator of Dawson, alleging himself to be
a creditor of Thos. N., united in the bill making allegations
peculiar to his claim, not necessary to set out here.

By amendment, the complainants charged that, on April
19, 1887, Mildred P. collusively made to Battey & Hamil-
tons a third mortgage on the land covered by the former

two. This was executed pending advertisement of sale of the land. Containing, as it does, a new consideration, by securing alleged debts not covered by the first two mortgages, as well as those included therein, and being given on account of defective description in the first two and for other patent considerations, it constitutes a novation of the original contract, and is therefore a satisfaction of the first two mortgages. Other charges are made, attacking this mortgage, not now material to be stated.

The answers of the defendants denied all fraud, collusion, or intent to hinder or delay creditors; that Mildred P. had no means when she married Thos. N.; knowledge or notice on part of Battey & Hamiltons of any fact impugning the title of Mildred P., or the reception by them of any cotton that was not credited on the mortgages; the correctness of the charge as to the manner in which the $1,000 in the sheriff's hands was raised; or that the taking of the third mortgage made a novation. The material charges of the bill were denied; and all the transactions referred to were alleged to be fair, honest, and in good faith. Mrs. Poullain answered that the complainants were estopped to deny her sheriff's title to the Greenesboro property because they had held part of it under deeds from her. The debts due by mortgage to Battey & Hamiltons were for supplies furnished by them and their predecessors, Berrys & Co., for the farm. Answer was made as to the claim of Brown, administrator.

At the hearing both sides introduced affidavits and other evidence in support of their pleadings. There was, among the rest, evidence tending to show that the money paid by Mrs. Poullain to the sheriff for the Greenesboro property and to take up the *fi. fa.* of the Bank of the University, was sent by Berrys & Co. to Thos. N. Poullain; that Battey was a member of that firm as well as of Battey & Hamiltons; that out of the money paid by C. P. Morton to Mrs. Poullain for part of the realty sold him, he took up the

claim of Berrys & Co. and paid the balance to her; that the tax digests showed that Thos. N. Poullain returned property, and his wife none, for the years 1871–1878, after which he returned none in his own right, but returned as agent for his wife up to 1886 ; that Battey had stated that his firm expected to purchase the land at the sale under the mortgage *fi. fas.* and to give Mrs. Poullain a certain time in which to redeem it; also that the firm intended to run the plantation during 1887. Some of these were controverted facts.

The chancellor granted an injunction against Mrs. Poullain, on the ground that the title under which she claimed was a voluntary conveyance from her husband and void as against creditors; but refused an injunction against Battey & Hamiltons, on the ground that they occupied the position of *bona fide* purchasers without notice of the defective title. To the latter part of his decision the complainants excepted.]