## THOMSON et al. v. CRANE et al.

### (Circuit Court, D. Nevada. March 23, 1896.)

### No. 588.

1. FRAUDULENT CONVEYANCES—VOLUNTARY DEEDS.

   A voluntary deed is fraudulent, by operation of law, where the facts and circumstances clearly show that existing creditors are thereby prejudiced, without regard to whether there was any actual or moral fraud in the conveyance.

2. SAME—CREDITORS—CONTINGENT OBLIGATION.

   The creditors entitled to object to a voluntary conveyance, by which the means of the grantor are impaired to their prejudice, include the holders of contingent obligations of such grantor, by way of guaranty or otherwise, as well as those to whom debts are due from him.

3. SAME—HOMESTEAD.

   A voluntary conveyance of a homestead cannot be set aside, as in fraud of creditors, since, being exempt from execution, its transfer could not hinder or prejudice them.

4. JUDGMENTS—COLLATERAL ATTACK.

   In a suit to set aside a voluntary conveyance as in fraud of creditors, a judgment of a competent court, having jurisdiction, in favor of the plaintiff, and against the grantor in such conveyance, is conclusive, as against such grantor, as to the existence of a debt to the creditor, and the grounds of such judgment cannot be inquired into.

5. SAME.

   It may be, however, that the grantee in such conveyance, not having been a party to the judgment against his grantor, is not precluded from examining into the grounds thereof.

This is a creditors' bill, brought to set aside certain conveyances of real estate, executed by the defendant E. Crane, upon the ground that said conveyances were voluntarily made, without consideration, for the purpose of avoiding and defeating a claim and demand held by complainants against him.

On the 19th day of February, 1876, E. Crane conveyed to his daughter, Mrs. A. G. Styles, certain land, for the expressed consideration of $5. On June 18, 1892, he conveyed to his wife, Mary E. Crane, certain real estate in Reno, Nev., for the expressed consideration of $5 and love and affection. On July 7, 1892, he conveyed to his daughter, Amelia H. Howard, 40 acres of land valued at $3,000, for the expressed consideration of $5 and love and affection. On October 5, 1892, the defendants E. Crane and his wife, Mary E. Crane, conveyed to their son, E. O. Crane, 80 acres of land, valued at $4,000, and 15 shares of stock in a reservoir and ditch company, of the value of $1,650, for the expressed consideration of $1,000. The conveyance to Mrs. Styles was executed long prior to the time of the transactions between E. Crane and the complainants, and no claim is or could be made against that conveyance. At the time the conveyances were made in 1892, the defendant E. Crane was about 80 years of age, and in ill health, and the conveyances were made for the purpose of dividing his property for the benefit of his children, and when he was solvent, and not indebted to any one, unless from the facts hereinafter stated, he had incurred a liability to complainants. The conveyances were all voluntary, and for the expressed consideration therein named, except the conveyance to the son, E. O. Crane, who had, previous to the conveyance, advanced to his father about $200, and the expressed consideration of $1,000 had been paid by him prior to the commencement of this suit. The daughters of defendant reside in California, and the only conveyances sought to be set aside herein are those made to Mary E. Crane and E. O. Crane.

On the 10th day of May, 1892, the complainants entered into a written agreement with the Reno Manufacturing Company, the substance of which was

that Stanton Thomson & Co. appointed the Reno Manufacturing Company their agent "for the sale of their farm implements and other goods." The corporation accepted said agency, and agreed to pay freight charges, taxes, insurance, and other expenses, and not to sell any goods on credit except to persons of undoubted solvency, and, when credit sales were made, to take notes payable to Stanton Thomson & Co., and to guaranty their payment; to transmit to Stanton Thomson & Co. cash received on Saturday of each week. and at the close of each month to make and transmit to them an account of sales for the current month, together with all notes on hand; that at any time after six months after date of shipment of goods, if so required, the Reno Manufacturing Company should give notes for balance of consignment unpaid, and that nothing should be construed as amounting to a sale without such requirement; that the goods were to be invoiced at regular wholesale prices, and that the amounts realized over and above the specified prices were to be "full commission" for the sales; that, for the violation of any of the covenants contained in the agreement, Stanton Thomson & Co. had the option to terminate the contract and take possession of the goods. Attached to this agreement as a part thereof, was the following guaranty:

"Know all men by these presents, that, in consideration of one dollar, to me in hand paid by Stanton Thomson & Co. * * * I hereby guaranty that the party of the second part to the within contract will in all respects fulfill the said contract, and that I will pay to Stanton Thomson & Co. any and all damages that they may suffer by reason of the failure of the party of the second part to perform each and all of the said covenants, and I further guaranty the payment to said Stanton Thomson & Co. of any and all notes made, indorsed, or guarantied by said Reno Manufacturing Company, without protest, waiving all notice of protest or nonpayment of said notes.

"In witness whereof I have hereunto set my hand and seal the day and year first above written.

"[Signed]                                    E. Crane.     [L. S.]
                                          "J. L. Stevenson.   [L. S.]"

J. L. Stevenson was the manager of the Reno Manufacturing Company.

On the 10th day of October, 1892, Stanton Thomson & Co. commenced an action against the Reno Manufacturing Company, J. L. Stevenson, and E. Crane, and in their complaint alleged the execution of the agreement and the guaranty, and set the same out in full; alleged that the Reno Manufacturing Company, "subsequent to the execution and delivery of said agreement, and at divers times and dates between the 10th day of May, 1892, and the 7th day of October, 1892, under and by virtue of said agreement, and in pursuance thereof, purchased and received from the plaintiff, and the plaintiff at divers times between the dates last aforesaid, to wit, in the year 1892, sold and delivered unto said defendant, Reno Manufacturing Company, certain goods, wares, and merchandise, at an agreed price, and to the full amount of $3,217.59." It was further alleged "that said goods, wares, and merchandise were purchased, sold, and delivered in pursuance of said contract and agreement, and since the date thereof, at defendant's special instance and request," and that demand for the payment thereof had been duly made, "but to pay the same, or return said goods, said defendant Reno Manufacturing Company has, and still does, wholly fail and refuse," and that defendants E. Crane and J. L. Stevenson were duly notified of such refusal, and that they refused to pay for or return the goods. On the same day that the complaint was filed and summons issued and served, the defendants therein appeared in court, and, without employing any counsel, filed their answer denying "each and every material allegation alleged in plaintiff's complaint." Proof was made, and the court thereupon rendered judgment in favor of the plaintiff for the full amount claimed.

In the present suit the defendant E. Crane denies ever having executed the guaranty attached to the agreement, and claims that his signature thereto is a forgery. His version of the transaction is to the effect that he gave a guaranty to Stanton Thomson & Co. for $1,000, on condition that they would let Stevenson have $1,000 worth of goods and that he (Crane) would guaranty that, as fast as the goods were sold, the money would be refunded to Stanton

Thomson & Co. The proofs upon the part of the complainants show that the goods were delivered to the Reno Manufacturing Company upon the faith and credit of the guaranty given by the defendant E. Crane.

Trenmor Coffin and L. T. Hatfield, for complainants.
Robert M. Clarke, and Chas. A. Jones, for defendants.

HAWLEY, District Judge, after stating the facts, orally delivered the opinion.

The statute of Nevada concerning fraudulent conveyances of real property provides, in substance, that all conveyances made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, debts, or demands are, as against such persons, utterly null and void. Gen. St. Nev. § 2638; Parish v. Murphree, 13 How. 92, 99; Collinson v. Jackson, 8 Sawy. 357, 14 Fed. 305; Clay v. McCally, Fed. Cas. No. 2,869; Shaw v. Manchester, 84 Iowa, 247, 50 N. W. 985; Wagener v. Mars, 27 S. C. 97, 2 S. E. 844. The statute also provides that:

"The question of fraudulent intent, in all cases arising under the provisions of this act, shall be deemed a question of fact, and not of law; nor shall any conveyance or charge be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration." Gen. St. Nev. § 2641.

The general rule is that fraud may be shown in conveyances of property, made to hinder, delay, and defraud creditors, by the conduct and appearances of the parties, the details of the transaction, and the surrounding circumstances, and may be inferred when the facts and circumstances are such as to lead a reasonable man to believe that the property of a debtor has been attempted to be withdrawn from the reach of his creditors. Cox v. Cox, 39 Kan. 121, 17 Pac. 847; Reynolds' Adm'rs v. Gawthrop's Heirs, 37 W. Va. 3, 16 S. E. 364; Burt v. Timmons, 29 W. Va. 441, 2 S. E. 780; Clinton v. Rice, 79 Mich. 355, 44 N. W. 790.

There is some evidence tending to show that the defendant E. Crane manifested some anxiety or uneasiness about the financial affairs of the Reno Manufacturing Company, or lack of confidence in its manager, prior to the time of the execution of the conveyances; but, from all the facts and circumstances of the case, as appears from the record, there is not, in my opinion, sufficient evidence to justify the inference that the conveyances in question, or either of them, were made or executed for the purpose of hindering, delaying, or defrauding creditors. The evidence shows that the conveyances were made apparently in good faith, and for a laudable purpose, and at a time when the grantor was solvent, and free from all debts and liabilities, save such as may have existed from the transactions growing out of and arising from the guaranty given by the grantor to the complainants for the faithful performance of the agreement on the part of the Reno Manufacturing Company.

The deeds having been executed and delivered by the grantor to the grantees without any intent on his or their part to hinder, defraud, or delay creditors of the grantor, it devolves upon the complainants to show that they were creditors of the grantor at the time

he executed the deeds. A voluntary deed is fraudulent by operation of law, where the facts and circumstances clearly show that existing creditors are thereby prejudiced, without regard to whether there was any actual or moral fraud in the conveyance. Parish v. Murphree, 13 How. 99; Jackson v. Lewis, 34 S. C. 1, 12 S. E. 560; Du Rant v. Du Rant, 36 S. C. 49, 14 S. E. 929; Cook v. Johnson, 12 N. J. Eq. 51; Baker v. Hollis, 84 Iowa, 682, 51 N. W. 78; Park v. Battey, 80 Ga. 353, 5 S. E. 492; Raymond v. Cook, 31 Tex. 375; Marmon v. Harwood, 124 Ill. 104, 16 N. E. 236; Benson v. Benson, 70 Md. 253, 16 Atl. 657; Knapp v. Day (Colo. App.) 34 Pac. 1008; Rogers v. Verlander, 30 W. Va. 620, 651, 5 S. E. 847; Schaible v. Ardner, 98 Mich. 70, 56 N. W. 1105; Frederick v. Shorey (Wash.) 29 Pac. 766.

This general doctrine is founded upon the principle that the law always requires that every person must be just before he is generous. It will not permit any person, who is indebted at the time, to give his property away, provided such gift proves in any manner prejudicial to the interest of existing creditors. The motive which prompts the person to make the gift is wholly immaterial. If the grantor or donor is indebted at the time, and the future event proves that it is necessary to resort to the property attempted to be conveyed away by a voluntary deed, for the purpose of paying such indebtedness, the voluntary conveyance will be set aside, and the property subjected to the payment of such indebtedness, upon the ground that it would otherwise operate as a legal fraud upon the rights of creditors, even though it might be perfectly clear that the transaction was entirely free from any trace of moral fraud. The statute is designed to prohibit frauds, by protecting the rights of creditors. If the facts and circumstances clearly show a fraudulent intent, the conveyance is void against all creditors. Where a voluntary conveyance is made by an individual free from debt, with a purpose of committing a fraud on subsequent creditors, it is void, under the statute. And if a voluntary conveyance be made, without any fraudulent intent, yet if the amount of property thus conveyed so impairs the means of the grantor as to hinder or delay his existing creditors, it is, as to them, void. But a voluntary conveyance is good, as against subsequent creditors, unless executed as a cover for future schemes of fraud. Horbach v. Hill, 112 U. S. 144, 149, 5 Sup. Ct. 81; Schreyer v. Scott, 134 U. S. 405, 411, 10 Sup. Ct. 579; Lawson v. Warehouse Co., 73 Ala. 293; Witz v. Osburn, 83 Va. 227, 2 S. E. 33; Todd v. Nelson, 109 N. Y. 316, 327, 16 N. E. 360.

It is claimed that complainants were not creditors of E. Crane until the entry of the judgment against him; that the guaranty, if signed by E. Crane, only created a contingent liability upon his part which might result in his becoming indebted to the complainants in the event that the Reno Manufacturing Company failed to faithfully perform its agreement; that such obligations are to be distinguished from those by note or bond to pay a specific sum of money at a given time where an indebtedness can be said to exist upon the signing of the note or bond, whereas the only obligation assumed by the guaranty in this case only became a fixed indebtedness when it was as-

certained and determined, by the judgment, that the Reno Manufacturing Company, had not kept its agreement, and the extent of its failure so to do. If this proposition can be maintained, by authority and reason, it is an end of this case; for the judgment was not obtained until after the execution and delivery of the deeds in question, and the defendants would be entitled to a judgment in their favor.

Can this contention be sustained? The judgment is, of course, competent evidence of the debt. 2 Freem. Judgm. § 418. As was said by the court in Lawson v. Warehouse Co., supra:

"When rendered by a court of competent jurisdiction, in the regular course of judicial proceedings, in the absence of fraud or collusion, it is a conclusive evidence of a debt existing at the time of its rendition. * * * It is not evidence of an indebtedness existing at any time anterior to its rendition; and if the conveyance is impeached as merely voluntary, as wanting only in a valuable consideration, if the time of rendition is subsequent to the conveyance, there must be other evidence than the judgment affords to show the existence of the debt when the conveyance was made."

See Robinson v. Rogers, 84 Ind. 539; Gordon v. McIlwain, 82 Ala. 247, 2 South. 671.

The complainants in this case do not rely solely on the judgment to establish the date when they became creditors of E. Crane. They introduced the original agreement between complainants and the Reno Manufacturing Company, and the guaranty, as signed by E. Crane, on the 10th of May, 1892, which was prior to the time of the execution of the deeds herein sought to be set aside. A creditor is not simply a person to whom a debt is due, but a person to whom any obligation is due. It is a person who has the right to require the fulfillment of any obligation, contract, or guaranty, and he is to be considered as a creditor of such obligor or guarantor from the time of his entering into the obligation.

The general principle, applicable to the facts of this case, is well expressed in 8 Am. & Eng. Enc. Law, 756, as follows:

"A creditor, in this connection, is not, necessarily, the holder of a debt merely, as that term is generally understood; for one having a legal right to damages capable of judicial enforcement is a creditor, within the meaning of the statutes and law upon the subject of fraudulent conveyances. So, where one incurs liability for another, as surety or the like, he may be considered as a creditor of the latter from the time of entering into the obligation, and various other claims, absolute or contingent, have been held sufficient to constitute the holders thereof creditors."

In addition to the authorities there cited, see Yeend v. Weeks (Ala.) 16 South. 165; Hunsinger v. Hofer, 110 Ind. 390, 11 N. E. 463; Bowen v. State, 121 Ind. 235, 23 N. E. 75.

In Bowen v. State, the court said:

"It is manifest, as it seems to us, that the liability of a surety on a guardian's bond must be governed by the same general principles which govern the liabilities of sureties on other obligations; that he cannot give away all of his property to the detriment of those for whose benefit the bond is given. The contract of suretyship is in force from the date of the execution of the bond, though the liability of the surety to pay depends upon the conditions of the bond."

In Yeend v. Weeks, the court said:

"It must be stated, in this connection, that an administration bond is a continuing obligation of security from the day of its execution to the termination of the administrator's authority to act; and, though it antedates a voluntary conveyance, yet the ascertainment of its breach, by proper judicial proceeding, begun and concluded after the execution of such conveyance, will, as between the judgment creditor and the grantor in the conveyance, relate back to the date of the bond, and be held to be a debt existing at the time. * * * A contingent claim is as fully protected as a claim that is certain and absolute."

The conclusion reached upon this point makes it necessary to consider other questions raised by the defendants against the right of complainants to maintain this suit.

It is contended that the judgment obtained in the district court of Washoe county was erroneous; that the action was not instituted upon the agreement made by the plaintiffs therein with the Reno Manufacturing Company, the faithful performance of which the defendant E. Crane had guarantied; that the complaint was based upon an entirely different cause of action; and that E. Crane was not in any event liable upon the claim set forth in plaintiffs' complaint. It is further claimed that the defendant E. Crane never signed any guaranty except for $1,000; that the signature of his name to the guaranty attached to the agreement is a forgery; that he was misled and deceived by the statements made to him at the time the judgment was rendered, in this, that he was informed that the judgment was only for $1,000. The manner in which the action was brought and the judgment obtained was unusual, perhaps suspicious; and it may, for the purposes of this opinion, be conceded that the judgment was erroneous. But it is evident that the court had jurisdiction to hear and determine the case. The defendant E. Crane was in court, and consented to try the case without employing counsel. Thereafter he employed counsel, and made a motion for a new trial, which was overruled. He allowed the time for taking an appeal to expire, and took no steps to have the judgment set aside on the ground that it was obtained either by fraudulent or deceptive means, or by accident or surprise, or any other sufficient cause for the interposition of a court of equity. The judgment, therefore, as to him, is final. The adjudication of any question arising in the courts is always final, unless corrected by an appellate tribunal, and is never subject to re-examination in any other than an appellate court upon any issue of law or fact, nor upon the ground that the decision therein is contrary to equity or good conscience, except in a direct proceeding to set it aside. The judgment, as entered, concludes the parties thereto, and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim, but as to any other admissible matter which might have been offered for that purpose; and it cannot be collaterally attacked. Cromwell v. County of Sac, 94 U. S. 351; Bissell v. Spring Valley Tp., 124 U. S. 225, 8 Sup. Ct. 495; Dowell v. Applegate, 152 U. S. 329, 343, 14 Sup. Ct. 611; Graff v. Louis, 71 Fed. 591; Mannix v. State, 115 Ind. 245, 251, 17 N. E. 565; McLeod v. Lee, 17 Nev. 103, 117, 28 Pac. 124.

It may be that the grantees in the conveyances made by E. Crane, not having been parties to the judgment, have the right to attack the validity of the judgment upon the principle announced in Esty v. Long, 41 N. H. 105, that:

"Where a creditor calls in question a conveyance made by his debtor, upon the ground of fraud, in an action between him and the grantee, the demand of the creditor must be subject to examination, in order to see whether he has a right, as such, to question the validity of the conveyance. If a judgment has been obtained by him, still, as between him and the grantee, who is no party to it, it will not be regarded as precluding the latter from an examination of the ground of it. The grantee may be allowed to show that it was obtained by fraud, or that the cause of action accrued under circumstances which would not give the creditor a right to impeach the conveyance."

See, also, Lawson v. Warehouse Co., 73 Ala. 293; Clark v. Anthony, 31 Ark. 549.

But upon this point we are confronted with the fact that there is a decided preponderance of evidence to the effect that E. Crane signed the guaranty which was offered in evidence, that the signature thereto is not a forgery, and that he must have known the character of the action and the amount of the judgment; and the further fact that the complaint in the action brought in the district court of Washoe county was based upon the conditions of the agreement and the provisions of the guaranty.

There is still another question to be considered. The 80 acres of land conveyed to E. O. Crane was part of a tract of land that E. Crane had owned for many years, and upon which his wife had declared a homestead several years prior to the signing of the guaranty in question. This homestead declaration was duly recorded, and has never been abandoned. If no conveyance had been made to the son, E. O. Crane, and the title thereto had remained in E. Crane, it could not have been subjected to any judgment or execution lien unless the land exceeded in value the amount allowed for a homestead.

Complainants cite the case of La Point v. Blanchard, 101 Cal. 549, 36 Pac. 98, as an authority to the effect that the fact that the land might have been claimed as a homestead does not make a transfer the less fraudulent. That case was, however, in many respects totally dissimilar from this. There the party had not filed any declaration of homestead. The land was not subject to any homestead claim, and the court held that the mere fact that the land might have been declared upon as a homestead did not exempt it from execution, and that the assignee of the insolvent was entitled to a decree canceling the conveyance and restoring the property as part of the estate of the insolvent. In the opinion the court said:

"Had the property, when conveyed, been exempt from execution, and therefore then beyond the reach of creditors, there would have been much force in the argument of respondent."

I am of the opinion that the position contended for by defendants' counsel on this point is correct. The complainants could not have enforced their claim, as against this 80 acres of land, if no conveyance had been made to the son; and, this being true, they are not in a position to complain of any voluntary conveyance of this land.

In Wap. Homest. 519, the author, after announcing that the rule is axiomatic that debts must be paid before gifts can be made, and that a voluntary conveyance is prima facie evidence of a fraudulent intent against creditors, and, if made by a person who is indebted, is a well-recognized badge of fraud, for its natural and probable tendency is to delay, hinder, and defraud creditors, and citing authorities on that point, said:

"Exempt property is not subject to this rule. Creditors are held not defrauded by the conveyance of the homestead without consideration. Having no right to make their money by execution against it, they have no cause to complain. It is incumbent on the creditor, who complains of a fraudulent conveyance, to show that his debtor has disposed of property that might otherwise have been subjected to the satisfaction of his debt. Until this is done no injury appears. Creditors cannot complain that a conveyance of a homestead is fraudulent as to debts for the payment of which it cannot be taken in execution. They could not reach it, if not conveyed, and hence the motives for the conveyance do not concern them."

The author also quotes with approval the language of the court in Fellows v. Lewis, 65 Ala. 343, 354:

"This question has been a great many times before the courts of the country, and in a large majority of cases the ruling was against the right of the creditor to subject the homestead, merely because its owner and occupant had conveyed his right to another, even though the conveyance was voluntary, or made under circumstances which would ordinarily stamp it as fraudulent. There can be no fraud unless there are claims and rights which can be delayed and hindered, and which, but for the conveyance, could be asserted. The law takes no cognizance of fraudulent practices that injure no one. Fraud without injury, or injury without fraud, will not support an action. Unless they coexist, the courts are powerless to render any relief."

See, also, Wap. Homest. 516, and authorities there cited; 1 Story, Eq. Jur. § 367; Crummen v. Bennet, 68 N. C. 494; Edmonson v. Meacham, 50 Miss. 34; Rhead v. Hounson, 46 Mich. 244, 9 N. W. 267; Stanley v. Snyder, 43 Ark. 430.

With reference to the shares of stock in the reservoir and ditch company which was conveyed by the same deed, it is only necessary to state that the conveyance was not purely voluntary, although it may be that there was not a full and adequate consideration. The facts are that the son had previously advanced to his father about $200, and promised to pay $1,000 more, and that all this money had been paid prior to the commencement of this suit. In all cases where a deed is executed for a valuable consideration, without knowledge by the grantee of any fraudulent intent of the grantor, it will be upheld; and where the consideration is valuable, inadequacy of price alone will not make the conveyance fraudulent, for in such a case the law will not weigh consideration in diamond scales. Prewit v. Wilson, 103 U. S. 22.

It follows from the views herein expressed that complainants are entitled to a decree as prayed for subjecting the land deeded by the defendant E. Crane to the defendant Mary E. Crane, conveying to her lots 3 and 4, in block No. 3, in Lake's addition to Reno, in Washoe county, Nev., to be sold to satisfy the demands of complainants, or so much thereof as may be necessary for that purpose, with costs, and that defendant E. O. Crane is entitled to judgment for his costs.