### MARY A. MARMON

*v.*

### THOMAS F. HARWOOD *et al.*

*Filed at Springfield March 28, 1888.*

1. FRAUDULENT CONVEYANCE—*voluntary conveyance to a child—retaining property apparently sufficient to pay debts.* A voluntary conveyance to a child by a debtor, is fraudulent as to pre-existing creditors of the donor even though the latter retains property apparently sufficient in value to satisfy all his indebtedness, when it results that the property retained is not in fact sufficient to discharge all his liabilities.

2. SAME—*inadequate provision for payment of debts.* Nor will the voluntary conveyance by a debtor be relieved of its fraudulent character as against creditors, merely from the fact that he has placed sufficient means in the hands of another for the payment of his debts, the fund so provided being misapplied to other purposes.

3. SAME—*motives and intent of the donor and his grantee, as giving character to the transaction.* If a voluntary conveyance from a parent to a child results in hindering or delaying creditors, it will be fraudulent in law, notwithstanding the grantor's motives may have been honest and upright, and he may have supposed he retained ample means to discharge all of his debts.

4. On bill by a creditor to impeach a voluntary conveyance, the motives of the grantee do not determine the validity of the transfer. If, however, the conveyance is based upon a valuable consideration, then the intent of the grantee may become important.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. JAMES S. EWING, and Mr. HAMILTON SPENCER, for the appellant:

The decree appealed from is erroneous, because it directs the property conveyed to Mrs. Marmon to be sold on the Harwood judgment, and is not in the alternative, that if the judgment is not paid by Mrs. Marmon then the property shall be sold. *Patterson* v. *McKinney,* 97 Ill. 41.

The conveyance of Mrs. Paist to Mrs. Marmon was not fraudulent as against creditors. She retained property abundantly sufficient to pay all her debts. There is nowhere in the record, either in the bill or in the proofs, any suggestion, even, that Mrs. Marmon was party to any alleged fraud. She had no knowledge of any debt owing by her mother, Mrs. Paist.

To subject lands to the payment of debt because of a fraudulent conveyance, it must appear that the grantee had notice of the fraud. *Kyzer* v. *Hull Skirt Co.* 34 Ind. 249.

A voluntary deed by a parent to a child will be upheld, if, at the time, the grantor retains property reasonably sufficient to pay his debts. *Durand* v. *Weightman,* 108 Ill. 489; *Wooldridge* v. *Gage,* 68 id. 157; *Bridgford* v. *Riddell,* 55 id. 261; *Moritz* v. *Hoffman,* 35 id. 553; *Ward* v. *Enders,* 29 id. 519; *Tunison* v. *Chamblin,* 88 id. 378; *Pratt* v. *Myers,* 56 id. 23; *Jackson* v. *Miner,* 101 id. 550. These cases refer mainly to the rights of subsequent creditors as against a voluntary conveyance.

As to the validity of a voluntary conveyance, as to prior creditors, it must be affirmatively shown that the grantor was insolvent, or at least deeply indebted, at the time of making such conveyance. *Gudgel* v. *Kitterman,* 108 Ill. 50; *Moritz* v. *Hoffman,* 35 id. 553; *Patrick* v. *Patrick,* 77 id. 555; *Bridgford* v. *Riddell,* 55 id. 261; *Gridley* v. *Watson,* 53 id. 186; *Tunison*

v. *Chamblin,* 88 id. 378; *Pratt* v. *Myers,* 56 id. 23; *Emerson* v. *Bemis,* 69 id. 537; *Crawford* v. *Logan,* 97 id. 396; *Patterson* v. *McKinney,* 97 id. 41; *Kehr* v. *Smith,* 20 Wall. 31; Story's Eq. Jur. sec. 1041; Bump on Fraud. Con. 282-287.

Messrs. KERRICK, LUCAS & SPENCER, for the appellees:

The fact that appellant may have been innocent of any fraudulent intent in taking the conveyance, will not do away with the effect of the fraud of the grantor, when there is no consideration. Bump on Fraud. Con. 268, 274-276.

It was not necessary to show that the grantor in fact intended to hinder or delay her creditors. If the gift tended in any way to hinder, etc., it was fraudulent in law. Bump on Fraud. Con. 271, 272.

The debtor need not be insolvent to render a voluntary conveyance fraudulent. Bump on Fraud. Con. 285, 288, 289; *Emerson* v. *Bemis,* 69 Ill. 541; *Patterson* v. *McKinney,* 97 id. 41.

A voluntary conveyance must be such as a prudent man would make with a proper regard to his creditors and circumstances, and a due consideration of all future events which prudence can foresee. Bump on Fraud. Con. 290; *Russell* v. *Fanning,* 2 Bradw. 640; *Bullett* v. *Worthington,* 3 Md. Ch. 99; *Cash* v. *Oakley,* 50 Miss. 629; *Kehr* v. *Smith,* 20 Wall. 31; *Edmunds* v. *Mister,* 58 Miss. 776; *Eddy* v. *Baldwin,* 32 Mo. 369.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a creditor's bill, brought by Thomas F. and Willis S. Harwood, in the circuit court of McLean county, against Mary A. Marmon, Maria Paist, Owen L. Cheney, Mary L. Cheney, his wife, and William W. Marmon. The object of the bill was to set aside certain deeds executed by Maria Paist to Mary A. Marmon and Mary L. Cheney, whereby certain real estate was conveyed to them, and subject the property to

the payment of a judgment which complainants had recovered against Maria Paist. Upon the hearing in the circuit court, on the pleadings and evidence, a decree was rendered in favor of the complainants. Mary A. Marmon appealed to the Appellate Court, where the decree was affirmed. To reverse that judgment she has appealed to this court.

There is no material conflict in the evidence, nor do the parties disagree in regard to the facts established by the evidence, upon which the decree was rendered; but it is insisted that the conveyance from Maria Paist to Mary A. Marmon was not fraudulent as against creditors; that at the time the deed was executed she retained property sufficient to pay all her debts, and for this reason the decree was erroneous.

It appears from the evidence, that in the month of April, 1884, Maria Paist, and her son, O. L. Cheney, executed and delivered to H. T. Levin a promissory note for $3556, due in two years, with interest at seven per cent per annum. This note was sold to the complainants, and they recovered a judgment upon it for $4053.84. On April 30, 1886, an execution was issued upon the judgment, and returned no property found. At the time the note was executed, Maria Paist was the owner in fee of lot 16, the east half of lot 17, and the south half of lot 19, all in White's addition, and was the owner of lot 6, of assessor's subdivision of lots 50, 51, 52, 53 and 54, of the original town, all in the city of Bloomington, and the east half of lot 4, in block 1, in Normal. She also had notes, made by W. W. Marmon, for about $2300. The first mentioned piece of property is known as the "homestead," the second piece as the "Cheney homestead," and the third as the "Hammerslaugh building." Appellant and O. L. Cheney are the daughter and son of Maria Paist, and Mary Cheney is the wife of O. L. Cheney.

On the 5th day of November, 1884, Mrs. Paist made two deeds,—*i. e.,* one to appellant, for the homestead, reciting a consideration of $7000, the other to Mary Cheney, for the Cheney homestead, the Hammerslaugh building, and the Normal

property. The homestead, which was conveyed to appellant, was clear from incumbrance, and worth $7000. The Cheney homestead was incumbered for $1000, but was worth $2500. The Hammerslaugh property was mortgaged for some $8000, but worth $4000 above the mortgage. The lots in Normal were worth $300. The deeds purporting to convey the property to appellant and to Mary Cheney were executed without consideration. At the time of these conveyances Mrs. Paist was indebted on a promissory note, which she had signed with her son, in the sum of $1000, in addition to the debt she owed complainants. The property she conveyed without consideration exceeded in value $13,000. She retained no real estate, or property of any character, except notes of W. W. Marmon for $2300, and a note, secured by a second mortgage on the fair grounds at Bloomington, for $6000. This claim was subject to a prior mortgage of over $11,000, held by one Brokaw. On the 16th day of March, 1885, the Hammerslaugh property was sold to Dr. Barnes for $4000, subject to the mortgage on the property. Soon after this sale, the fair grounds, upon which Mrs. Paist held a second mortgage, were advertised for sale on the first mortgage, and at the sale Mrs. Paist became the purchaser, for the amount of the debt and costs. Upon making the purchase she paid $5000 cash down, and gave a mortgage on the property to secure the remaining $7000. The cash payment was made up of $4000 which Mrs. Cheney had received from the sale of the Hammerslaugh property, and $1000 which she borrowed. On the 29th day of September, 1885, Maria Paist conveyed the fair grounds to James B. Stevenson for $7500, subject to the mortgage she had given, of $8000. She received cash, $2000, Normal property, $2500, notes, $3000. The Normal property was soon sold, and the cash, notes and proceeds of the Normal property were all turned over by Mrs. Paist to her son, O. L. Cheney, and he lost the entire amount on the Chicago Board of Trade. The notes Mrs. Paist held against Marmon had all been disposed

of before complainant's debt matured, except a note for $1300, which was turned over to secure attorney's fees to defend this suit.

In *Patterson* v. *McKinney*, 97 Ill. 41, where a voluntary conveyance of lands had been made by Patterson for the benefit of his wife, the grantor retaining property which exceeded in nominal value the total amount of his indebtedness existing at the time of the conveyance, it was insisted, as it is in this case, that the transaction was not fraudulent as against creditors; but the position was not sustained. In deciding the case the court held that a voluntary conveyance to a wife or child when the donor is in embarrassed financial circumstances, is fraudulent as to pre-existing creditors, even though the party retains estate nominally in value equal to, or more than equal to, all his indebtedness, when the event shows that the property retained is in fact not sufficient to discharge all his liabilities. In the *Patterson case*, the grantor, at the time he made the conveyance to his wife, had more property than Maria Paist had when she conveyed to appellant, and was indebted to a greater extent; but this case can not, in principle, be distinguished from the *Patterson case*. The principle which controlled the one must govern the other.

In April, 1884, when the note upon which complainants obtained judgment was executed, Maria Paist owned property (mostly real estate) exceeding in value $13,000, but when the judgment was rendered, two years thereafter, she had no property liable to execution, and almost all her property had, between the date the note was given and the date of the judgment, been transferred to her children without consideration. Seven months after the note upon which complainants obtained judgment, was given, Mrs. Paist conveyed to appellant the homestead,—the property here involved,—the property at the time being worth $7000; but no consideration passed from the grantee to the grantor. It may be that Mrs. Paist did not, at the time she conveyed this property to her daughter, design

to defraud her creditors; or it may be that the transaction was not fraudulent in fact,—that she expected to pay her debts from the property she retained, when she made the conveyance to appellant. But however that may be, we think it plain, from the evidence introduced on the hearing, the transaction is one which, as against pre-existing creditors, was fraudulent in law. What may have been in the mind of the grantor when she conveyed the property to her daughter, is immaterial. The conveyance being voluntary, if it resulted in hindering, delaying or defrauding creditors, it must be regarded as fraudulent in law. This view of the law is well expressed by Bump on Fraudulent Conveyances, secs. 271, 272, as follows: "The law will not speculate about what is actually passing in the donor's mind, for the act need not be immoral or corrupt. The law does not concern itself about the private or secret motives which may influence the debtor. It does not deal with his conscience. He may make a conveyance with the most upright intentions, really believing that he has a right to do so, and that it is his right and duty to do it; and yet, if the transfer is voluntary, and hinders, delays or defrauds his creditors, it is fraudulent. * * * The debtor may have some other purpose in view, but the intent to defraud is a part and parcel of his act."

It may be said, that in accepting the conveyance appellant was innocent of any fraudulent intent. Conceding that to be the case, the transaction would not be relieved of a fraudulent character. Where a bill is brought to impeach a voluntary conveyance by a debtor, the motive of the grantee does not determine the validity of the transfer. It is the motive of the giver, and not the knowledge of the acceptor, that is to determine the validity of the transfer. (Bump on Fraudulent Conveyances, 280.) Had the transfer been made for a good consideration, a different question might arise; but such was not the case.

Reference has been made in the argument to the fact that Mrs. Paist offered to sell the fair grounds property to com-

plainants, in payment of their debt, and also, upon the sale of that property, she placed a fund in the hands of O. L. Cheney amply sufficient to pay the debt, which he was directed to apply in that way. There are facts tending, doubtless, to show that Mrs. Paist did not intend, by the conveyance to her daughter, to defraud her creditors; but as has been said before, it was not necessary to prove actual fraud in order to impeach the transaction. When the deed was made to appellant, the grantor was indebted to the amount of $5000. Without securing or paying these debts, she conveyed to her daughter the largest portion of her estate without consideration, the property retained not being adequate, as the sequel showed, to discharge her debts. As was held in the *Patterson case, supra*, she had no right, as against her creditors, to make such a disposition of her property. As respects creditors, such a transaction was fraudulent in law. But aside from this, as to the fact that Mrs. Paist placed funds in the hands of her son, O. L. Cheney, to pay her indebtedness, was of no importance. He was insolvent, and known to be so, when the funds were placed in his hands, and an act of this character could be of no benefit to creditors, nor could it have any bearing on the case. Had the money been placed in the hands of a solvent party, the act might be regarded in a different light, as it might then have been anticipated that it would be paid over to creditors; but when the money was turned over to Cheney, Mrs. Paist must have known that it would be lost or squandered, as it was.

Objection is made to the form of the decree, but we do not regard it so informal as to require a modification.

The judgment will be affirmed.

*Judgment affirmed.*