(No. 18704.—

Harry M. Zwick, Plaintiff in Error, vs. James Catavenis et al.—(Christ Vassios et al. Defendants in Error.)

*Opinion filed June 23, 1928—Rehearing denied October 6, 1928.*

H. F. KNOX, for plaintiff in error.

MOSES PULVERMAN, WALTER W. WILLIAMS, and THURLOW G. LEWIS, (TILMAN B. CANTRELL, of counsel,) for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error seeks a review of a judgment against him in an ejectment proceeding filed by him in the circuit court of Franklin county. He claims as the grantee of Henry Glinberg. He filed this suit against James Catavenis and Gus Vardas, doing business as the Union Lunch Room, who were tenants in the property, and against the National Iron Company as claiming some interest in the property. Later a non-suit was taken as to the National Iron Company. Service was had on the tenants. No defense was interposed by them, and at the May, 1925, term of the circuit court a judgment was rendered in favor of plaintiff in error. Later, during that term, defendants in error here, Christ Vassios, James Vardas and Gus Vardas, doing business as the Union Lunch Room, assignees of Catavenis and Vardas, the original defendants, filed a motion for a re-

trial under the statute in force relative to the trial of ejectment suits. Defendant in error the First National Bank of West Frankfort and B. Wides filed a motion for leave to intervene as defendants. This motion was allowed. At the February, 1927, term of the court the cause was tried before a jury. Plaintiff in error, as plaintiff below, filed an affidavit of common source of title through Rolla M. Treece, as provided by statute. On the trial he proved a conveyance from Treece to Glinberg and from Glinberg to himself, and then proved the defendants' title from Treece down to the First National Bank of West Frankfort. Defendants in error did not controvert on the trial the record evidence of title as offered by plaintiff in error, but offered evidence to prove that the deed from Glinberg to Zwick was made and taken in fraud of Glinberg's creditors, and was therefore not effective as a title upon which to base an action in ejectment. The jury returned a verdict of not guilty, and judgment was entered on that verdict.

Plaintiff in error contends, first, that the court erred in permitting the defendants to plead after the expiration of a rule which had been entered against them to plead by a certain day. As to this objection it is sufficient to say that it was not raised in the trial court but plaintiff in error proceeded to trial without objection and raises the point for the first time here. This point is not entitled to further consideration.

It is also contended that the First National Bank of West Frankfort had no title because the proceedings under which it claimed title were void and ineffective so far as the transfer of title to it is concerned. Defendants in error reply that under the record of this case it is wholly immaterial whether this point is good, for the reason that plaintiff in error must recover in ejectment on the strength of his own title and not the weakness of the defendants' title, and the record clearly shows that the deed from Glinberg to plaintiff in error, under which the latter claims, was in-

effective to warrant recovery in an ejectment suit for the reasons hereinbefore stated.

It appears from the evidence that Rolla M. Treece was the original owner of the property in question. On August 4, 1921, he conveyed it by warranty deed to Henry Glinberg. On that day Glinberg and wife gave a first mortgage on the premises to the West Frankfort Bank and Trust Company for $5000 and a second mortgage on the premises to Treece for $2000, and on August 19, 1921, he gave to B. Wides and L. Roachman, doing business as the National Iron and Metal Company, a co-partnership, another mortgage for $5000. The notes of this last mortgage were assigned without recourse to Louis Silberman, who, in turn, assigned the same without recourse to the National Iron Company, a corporation. In October, 1922, Treece filed a bill to foreclose his mortgage, and the trust company and the National Iron Company filed cross-bills for the foreclosure of their respective mortgages. At that term the court rendered a decree foreclosing the three mortgages and finding the trust company mortgage to be a first lien, the Treece mortgage a second lien and the National Iron Company mortgage a third lien, and ordered the premises sold and the mortgages paid in accordance with such priority. Under this decree the master sold the premises to Treece for $9030. The foreclosure proceedings also made parties defendant certain judgment creditors of Glinberg. The decree for sale ordered the payment of the mortgages within thirty days, and if not so paid the master to sell the premises and distribute the funds as herein indicated, and if the amount received from the sale was not sufficient to pay the liens found to exist, the master was to specify the deficiency in his report, and on the coming in and approval of the report of sale the Glinbergs were to pay the amount of such deficiency. The master sold the property and reported that he had sold it "for the sum of $9030, same being debt, interest and costs." The decree of foreclosure, however,

had found that the trust company, as first mortgagee, had a lien for $6052.13, Treece for $2631.48 and the National Iron Company for $5654.86, making a total of $14,338.47. No deficiency was reported by the master and no judgment of deficiency was entered against the Glinbergs. Later, in September, 1924, the National Iron Company, as third mortgagee, sued out an execution on the decree, levied on this property, and paid to the master in chancery the sum of $9960.31 for the purpose of redeeming the premises from the certificate issued to Treece as purchaser at the foreclosure sale. Treece accepted the money and released and discharged all interest in the premises which was vested in him by virtue of the master's sale.

Plaintiff in error's contention is that since no deficiency decree was entered against the Glinbergs, the effect of the release of the master's certificate by the payment of the redemption money to Treece and his acceptance thereof and release was to re-vest the title in Glinberg free of the liens of the foreclosure decree, and that since no deficiency decree was entered in the foreclosure proceeding against the Glinbergs, the execution sued out by the National Iron Company was void and it acquired no title under the sheriff's deed, which had been issued to it after the expiration of the period of redemption, and that since this is so, Glinberg, when he conveyed to plaintiff in error, held the unincumbered title to the premises. This deed from Glinberg to plaintiff in error is the title by which the latter seeks to oust the First National Bank, which is in possession of the property through its tenant, the Union Lunch Room. While defendants in error, as defendants in the ejectment proceedings below, filed an answer to plaintiff in error's affidavit of common source of title, in which they denied that Treece was the common source of title, no evidence was offered in support of that denial, but the defense was that the transfer from Glinberg to plaintiff in error was fraudulent as against creditors, and that, even if it be conceded that

the property by these various transactions became re-vested in Glinberg free from liens, nevertheless in an ejectment proceeding, where plaintiff must recover on the strength of his title and not the weakness of the title of defendants, the fraudulent conveyance from Glinberg to plaintiff in error defeats the latter's right of recovery.

The evidence shows that at the time of the transfer of this property from Glinberg to plaintiff in error the former owed approximately $40,000 to various creditors. About ten months following the making of this deed Glinberg went into bankruptcy. The record shows his estate would realize but about $200, to be distributed among the unsecured creditors. The evidence as to the value of the property at the time of the transfer from Glinberg to plaintiff in error ranges from $12,000 to $15,000. The evidence shows that at the date of the deed Glinberg owed plaintiff in error $500. The deed recites a consideration of $4600, but Glinberg, when placed on the witness stand, stated that he owed plaintiff in error but $500 and some interest. He also testified that plaintiff in error knew of his financial condition, which was practically the same at the time of the transfer of the property as when he went into bankruptcy. He testified that he had been advised that he was the owner of the property; that he knew a lawsuit would be necessary to recover it; that no money passed between him and plaintiff in error, but that plaintiff in error agreed that if he succeeded in recovering the property he was to return one-third of its value to Glinberg, plus the $500 which Glinberg owed him.

Plaintiff in error contends that the transaction was a *bona fide* transaction, and that Glinberg had a right to prefer him as his creditor by transferring the property to him, and that while the evidence showed the property to be worth between $12,000 and $15,000, there were certain judgments against Glinberg amounting to over $10,000. It is conceded in argument, however, that these judgments were not liens

against this property at the time of the transfer by Glinberg to plaintiff in error for the reason that no execution had been issued within a year, as required by statute in order to make such a judgment a lien. While defendants in error do not concede that the property became re-vested in Glinberg, it is not necessary for the purpose of this suit to pass on that question and we do not decide it. The contention is, that because of the fraud in the transfer from Glinberg to plaintiff in error the latter did not secure such title as would enable him to maintain ejectment.

It is a familiar principle in ejectment cases that the plaintiff, if he is to recover, must do so on the strength of his own title and not the weakness of the defendant's title. (*Allott* v. *Wilmington Light and Power Co.* 288 Ill. 541; *Phelps* v. *Nazworthy,* 226 id. 254; *Terhune* v. *Porter,* 212 id. 595; *Boyer* v. *Thornburg,* 115 id. 540; *Sidwell* v. *Schumacher,* 99 id. 426.) Section 4 of the statute on ejectment (Smith's Stat. 1927, p. 1185,) provides that "no person shall recover in ejectment unless he has, at the time of commencing the action, a valid subsisting interest in the premises claimed, and a right to recover the same or to recover the possession thereof, or some share, interest or portion thereof, to be proved and established at the trial." By section 19 of the act it is provided that the defendant may give in evidence any matter which tends to defeat the plaintiff's action, subject to certain exceptions not material here. In this case defendants in error, as defendants below, filed the general issue. Under this plea they were entitled to make any proof which would defeat the title of the plaintiff. (*Sprenzel* v. *Windmueller,* 286 Ill. 411.) Section 4 of the Statute of Frauds and Perjuries (Smith's Stat. 1927, p. 1476,) provides: "Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, * * * made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, de-

cree or judgment suffered, with like intent, shall be void as against such creditors, purchasers and other persons." Section 5 provides: "The foregoing section shall not affect the title of a purchaser for a valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

In ejectment proceedings, proof that the transfer under which the plaintiff claims title was executed in fraud of creditors is a complete defense. (*Phelps* v. *Nazworthy, supra; Kirkpatrick* v. *Clark,* 132 Ill. 342; *Jamison* v. *Doe,* 3 Scam. 113; 36 L. R. A. 360, note.) Where a transfer is made by an insolvent debtor preferring a creditor, by which transfer a secret trust is created for the benefit of the debtor, such conveyance, though absolute on its face, is fraudulent and void as to creditors. The natural and necessary effect of such transfer is to mislead, deceive and defraud creditors. When the transfer in fact creates a secret trust for the benefit of the grantor the conveyance is void as to creditors of the grantor even though such transfer is made for a valuable consideration. Where the property transferred is more than is reasonably necessary to pay the debt owed, the transfer is fraudulent whether so intended or not, as it places beyond the reach of creditors that which rightfully belongs to them. (*McKey* v. *Cochran,* 262 Ill. 376; *Beidler* v. *Crane,* 135 id. 92; 21 L. R. A. (n. s.) 222.) While a debtor may prefer a creditor or creditors and such preference is valid notwithstanding the claims of other creditors, provided the debt preferred is actual and the property transferred does not clearly exceed the amount of the claim and the transaction is not a mere device to secure an advantage to the debtor to hinder, delay or defraud other creditors, yet such intent to defraud or to secure by such transfer an advantage to the debtor making it may be implied from the relationship of the parties taken in connection with other circumstances proved. There

may be circumstances attending conveyances and transfers to hinder, delay and defraud creditors, which are in law denominated "badges of fraud." They do not in themselves constitute fraud, but are rather signs or indicia from which the existence of fraud may be properly inferred as a matter of evidence. Badges of fraud are not conclusive, but are strong or weak, according to their number and concurrence in the same case. They may be overcome by evidence establishing the *bona fides* of the transaction. Whether badges of fraud shown in the evidence are sufficient to establish the fact that the conveyance in question was fraudulent is a matter for the jury to decide. Fraud will not be presumed but must be proved. Proof of it may be either direct or circumstantial. Agreements to perpetrate fraud are not made in the open—they are secret arrangements. As a result it frequently occurs that while fraud cannot be shown by direct evidence, yet it may be shown by proof of facts and circumstances from which the jury may rightfully infer the existence of the fraud charged. If a consideration of all the circumstances justifies the conclusion that the transaction was fraudulent, the jury are warranted in finding that fraud exists though there be no direct evidence. (*Fabian* v. *Traeger,* 215 Ill. 220; *Podolski* v. *Stone,* 186 id. 540; *Schumacher* v. *Bell,* 164 id. 181.) In this case the evidence clearly establishes that Glinberg transferred this property to plaintiff in error at a time when he was insolvent, of which fact plaintiff in error had been advised. It is evident from the record that both had been advised that the title to the property was in Glinberg free from incumbrance. The only consideration was the payment of a debt of $500 and some interest and the agreement that plaintiff in error was to give back to Glinberg, when he had succeeded in getting possession and clearing up the title to the property, one-third of the value of the property. It is not contended that any other consideration passed between the parties to the deed. It is evident that

a secret trust was established in plaintiff in error for the benefit of Glinberg and in fraud of the latter's creditors. The transfer was therefore fraudulent as to creditors, and plaintiff in error's title to the premises was not sufficient to support an action in ejectment.

The jury were justified in returning a verdict against plaintiff in error, and the circuit court did not err in entering judgment thereon, and its judgment is affirmed.

*Judgment affirmed.*