(No. 23145.—

GEORGE D. BANNING, Receiver, *et al.* Appellees, *vs.* EVERETT
G. PATTERSON *et al.*—(HAZEL PATTERSON, Appellant.)

*Opinion filed May 12, 1936—Rehearing denied June 11, 1936.*

MADDEN & LADEN, and CHARLES H. LINSCOTT, for
appellant.

MILLER & THOMAS, and GUYER & BERRY, (CHARLES A.
THOMAS, and STANLEY H. GUYER, of counsel,) for ap-
pellees.

Mr. JUSTICE ORR delivered the opinion of the court:

The appellee George D. Banning, as the receiver of a
State bank, by his verified creditor's bill in equity, endeav-
ored to have the title to certain real estate in Winnebago
county declared to be in the defendant Everett G. Patter-
son, in order to collect a judgment against him for $4483.63,

obtained by the receiver in that county September 10, 1932. Patterson had been adjudicated a bankrupt, and Sam Schreiber, the trustee in bankruptcy of his estate, intervened in the suit, asking that the title to the property involved be declared in him, subject to the judgment lien of the receiver. The circuit court of. Winnebago county decreed that the title to tract 1 should vest in the trustee in bankruptcy subject to the lien of the receiver's judgment, if the indebtedness of the bankrupt was not paid by defendants, or some of them, in thirty days. The decree failed to adjudicate the title to tract 2. On this appeal as to tract 1 by Hazel Patterson, the receiver and the trustee cross-appealed because the decree failed to order the conveyance of tract 2 set aside and declared void as to them. A freehold is thus involved. *Dean* v. *Plane,* 195 Ill. 495; *Daly* v. *Kohn,* 230 id. 436; *Ashton* v. *Macqueen,* 361 id. 132.

In 1923, according to the bill, Niles Patterson possessed the fee to a 348-acre farm (tract 1) and to residence property in Durand, (tract 2). In that year Niles and his wife, Helen, by two warranty deeds conveyed both tracts to their son, Everett, in fee simple, and both deeds were shortly afterwards recorded. Their other children at the time were a son and two daughters and there was a daughter of a deceased child, all of whom were defendants to the suit. At the time there were two banks in Durand. In 1931, and prior thereto, Everett G. Patterson was president and a director of the Durand State Bank, which was merged with the Citizens State Bank of the same place on January 17, 1931. A short time prior to the merger, Everett G. Patterson, with others, acting on the orders of the State Auditor, executed notes to increase the assets of the bank. After the merger the note of Everett G. Patterson became the property of the new bank. Upon the subsequent failure of this new bank, the receiver reduced the Patterson note to a judgment and now seeks to collect. The title to tracts 1 and 2 remained in Everett G.

Patterson until August 22, 1932. On or about that date he executed two quit-claim deeds whereby he conveyed title to both tracts to his mother, Helen. The deeds were recorded the same day. On September 19, 1932, two quit-claim deeds executed by Helen Patterson conveyed the fee simple title to the two tracts to Hazel Patterson, and were recorded March 13, 1933, about one month after the death of Helen Patterson. The bill of the receiver was filed to the January, 1933, term of court, before the last two deeds had been recorded. In the bill the receiver alleged that the two deeds from Everett G. Patterson to Helen Patterson were made with the intent of hindering and delaying the creditors of Everett G. Patterson, and prayed that they be set aside and the premises subjected to execution upon the judgment.

Everett G. Patterson filed his sworn answer, denying lack of consideration for the deeds. The answer continued with these averments: That on the day Niles Patterson and wife conveyed the two tracts to him, he (Everett) executed his quit-claim deeds conveying the premises to Helen Patterson; that the conveyances were made for the purpose of transferring the fee simple title in the two tracts to Helen Patterson; that the deeds of Everett G. Patterson to Helen Patterson were delivered to her on or about August 29, 1923, where they remained until they were recorded, August 27, 1932. He denied that he possessed any right, title or interest in the tracts at any time, and stated that the conveyances were made a long time prior to the execution of his note to the Durand State Bank. The allegation was made that tract 2 was the homestead of Helen Patterson for more than twenty-seven years prior to her death.

On July 27, 1934, Everett G. Patterson was adjudicated a voluntary bankrupt. After he was examined at bankruptcy hearings, on leave granted, he filed a sworn amendment to his answer. In this he said that Niles Patterson occupied tract 1 as a homestead until his death, in

1925; that Helen Patterson possessed a homestead therein until her death, in 1933; that the two obtained all the income from tract 2 according to their respective legal rights thereto; that he did not pay anything to Niles and Helen Patterson for the conveyances to him of the two tracts; that they were made for the sole use and benefit of Niles and Helen Patterson, during the lifetime of Niles, and after his death for Helen; that Helen Patterson, after the death of her husband, did, in fact, receive all the income from the two tracts until she conveyed them to Hazel Patterson. He denied the receipt of any benefits whatever from the two tracts, further stating that the deeds executed by him to his mother, purporting to have been made on August 29, 1923, were in fact executed on or about August 27, 1932.

The allegations of fraudulent intent on the part of Everett G. Patterson, as contained in the bill, require us to carefully examine the evidence for and against those allegations. It is well at this time to call particular attention to the different grounds of defense assumed by Everett G. Patterson in his sworn answer and the sworn amendment thereto. In short, he first disclaimed the possession of any interest in the tracts at any time, except as he was the mere intermediary for transferring the titles thereto from Niles Patterson to his wife, Helen Patterson. The amended answer sets up the defense of a parol trust, which, if established, will enable Hazel Patterson to retain fee simple title to the tracts, free and clear of any claims of the bank receiver and of the trustee in bankruptcy.

The defendants offered in evidence the six deeds by means of which the title moved in sequence from Niles Patterson and wife to Hazel Patterson; receipts for general taxes paid by Helen and Hazel Patterson on both tracts, from 1925 to 1933, inclusive; special assessment notices addressed to Helen Patterson; special assessment receipts

paid by her on tract 2; a lease to tract 1 dated October, 1925, signed by Everett G. Patterson, trustee, as lessor; a lease to tract 1 dated October, 1929, signed by the same person as agent for Helen Patterson, lessor, and checks drawn on the account of Helen Patterson, signed "Helen Patterson by Everett G. Patterson." The latter testified that the deeds from him to Helen Patterson, dated August 29, 1923, were in fact executed on the day they were recorded—*i. e.,* August 27, 1932; that Helen and Hazel Patterson furnished all money expended upon or for the two tracts during the years each was the beneficiary of the trust estate, and that he was not the only one authorized to check on the account of his mother, as his brother, Niles O. Patterson, possessed like authority. He related that a short time prior to the death of Helen Patterson she gave all of the personal property on tract 2 to Hazel Patterson, and for that reason it was not inventoried as part of his mother's estate. He admitted that the deeds dated August 29, 1923, did not tell the true date on which they were executed; that he knew his sworn statement in the original answer, that these two deeds were executed in 1923, was untrue when he made it; that he went to the same notary who had taken the acknowledgment to the two deeds executed by Niles and Helen Patterson in 1923, whereby the tracts were deeded to witness, and had him acknowledge the two deeds from him to Helen Patterson, although he knew, at the time, the commission of this one-time notary had expired. He said no explanation could be given by him concerning the discrepancies between the statements appearing in the two answers concerning the deeds from him to Helen Patterson. This witness related that a short time after he conveyed the tracts to his mother he drew her will, by which she gave all her estate to Hazel Patterson, with the exception of a small legacy to each of the other children and the grandchild. He admitted further that he was the scrivener who drafted all of the instruments.

Hazel Patterson testified that she returned home to live with her father and mother in 1923; that she rented the homestead (tract 1) to Everett G. Patterson in 1933; that she was home when her mother gave the deeds conveying the two tracts to her; that she did not see the instruments drawn, executed or acknowledged and did not know they were in existence until handed to her, and that she did not record the deeds until after the death of her mother, in order to comply with her request to that effect. She testified, on cross-examination, that her father wanted her mother to have all of the property and he knew he could not convey it directly to her. From the record it is evident that the complainant and intervenor could not produce any direct evidence to offset the testimony and exhibits of the defense. About all they could do, under the circumstances, was to attempt to show that the evidence of the defense in fact supported the averments of the bill instead of supporting the averments of the answer as amended, aided by whatever inferences might be properly drawn from the evidence.

Hazel Patterson contends that the evidence produced before the chancellor is sufficient to establish, in fact and law, the theory of defense furnished in the sworn amended answer of Everett G. Patterson—*i. e.,* that a resulting trust has been established by means of parol evidence. To sustain this contention it must necessarily appear that the facts are not compatible with any other result sought to be derived therefrom. We do not question the line of authorities furnished by appellant bearing upon the creation of resulting trusts and the proving of the same by parol evidence. We must hold, however, that the law of resulting trusts is inapplicable to the present case, and furthermore, were it applicable, the proof in support thereof falls far short of establishing such a trust. The chancellor ruled properly when he refused to permit the introduction of any testimony given by Everett G. Patterson, Hazel Patterson,

or others, which sought to establish certain alleged statements of Niles Patterson, made at or about the time he transferred the tracts in question to Everett G. Patterson, to the effect that he did so for the purpose of giving the tracts in question to his wife, Helen, because she had worked equally as hard for it as he. It is true that Hazel Patterson, on cross-examination, did say that Niles Patterson told her in November, 1923, that he wanted her mother to have all of his property, for she had worked as hard for it as he. Her testimony in this respect, standing alone, affected by her evident interest and the advantage that would accrue to her if she should win, gives her words little weight.

The most favorable items of testimony in behalf of appellant's theory are that Everett G. Patterson, in a lease of tract 1 made several years before he was in financial straits, denominated himself as a trustee, and in a second lease to the same tract called himself an agent of Helen Patterson. He also established, by means of checks, that the expenses in connection with both tracts during the lifetime of Helen Patterson and subsequent to the death of Niles Patterson were paid out of her bank account. These three testimonial items are in support of the testimony of Everett G. Patterson that he was functioning in the management of this property as a trustee. But to our minds this is far from conclusive. In the first place, little credence can be given to the testimony of Everett G. Patterson, as his sworn original and amended answers are diametrically opposed, and he was unable to account for the circumstance. The two leases and the canceled checks, with the support of such additional testimony as could be relied upon, do not support the theory of a resulting trust. Inasmuch as Niles Patterson deeded his property to Everett G. Patterson when neither one of them was in present or anticipated financial straits, the only reasonable assumption is that Niles Patterson did not intend to make Everett G. Patter-

son a trustee of the character sought to be established by the evidence. The sworn answer of Everett G. Patterson negatives this, for he stated therein that he was only given title to the property of Niles Patterson for the purpose of immediately transferring it to Helen Patterson. Niles Patterson during his lifetime, subsequent to the conveyances to Everett G. Patterson, received and enjoyed all of the income from his property for the benefit of himself and wife. Subsequent to his death, his widow, Helen, received all of the income from the property until she died. The record is bare of any testimony that during all of these years either Niles Patterson or his wife, Helen, ever tried to obtain a conveyance of the property from Everett G. Patterson to Helen Patterson. It is indeed a strange circumstance that Everett G. Patterson never made a move to vest the title to the property in his mother until he fell into financial straits. The evidence, both instrumental and parol, is more logically construed to establish, not a resulting trust, but that Niles Patterson and his wife conveyed the fee title in all Niles' property to Everett G. Patterson devoid of any trust, and, by a parol understanding, reserved to Niles Patterson and Helen Patterson for their lives, or for the life of either of them, a life estate in the property. The handling of the property by Everett G. Patterson, from the time of the conveyances until he deeded the same to his mother, is entirely compatible with this theory, since Niles Patterson and his wife, Helen, during their respective lives, received all the income from the property conveyed to Everett G. Patterson.

In order to establish the trust, appellant is required, under the law, to submit proof thereof which is so clear and convincing that it is unequivocal and unmistakable to the extent of sustaining only one conclusion. If the evidence produced is capable of a reasonable explanation upon some theory other than that of a trust, the trust theory fails. (*Neagle* v. *McMullen,* 334 Ill. 168.) The terms

of the trust must be certainly and definitely established. (*Chechik* v. *Koletsky,* 311 Ill. 433.) What appellant strives for is the transference of title on parol evidence after the title has stood a long time. Before this will be ordered, a court must have before it evidence of most convincing character. The change cannot be made upon the declarations of the party sought to be charged and testified to by witnesses after the lapse of several years. *McHenry* v. *McHenry,* 248 Ill. 506.

The decree of the lower court was wrong in ordering that unless the defendants, or some of them, pay the judgment obtained by the receiver on the note, and the claims in bankruptcy, within thirty days after the rendition of the decree, the title to tract 1 should vest in Sam Schreiber, the trustee in bankruptcy, subject to the judgment lien of the receiver. This was unnecessary, as the trustee became vested with the title by operation of law. The decree, as drawn, would permit the co-defendants to abrogate the provisions of the Bankruptcy act with reference to liquidation of the assets of the bankrupt estate. The co-defendants would be able to obtain the assets involved in this action without an appraisal, notice of sale and sale. This portion of the decree was a nullity and did not purport to take away any rights but sought to confer added rights.

The decree is reversed and the cause is remanded, with directions to the circuit court to modify its decree as to tract 1 in accordance with the views expressed in this opinion, and to order the conveyance of tract 2 set aside and the title declared to be in the trustee in bankruptcy subject to the lien of the receiver's judgment, in like manner as tract 1.

*Reversed and remanded, with directions.*