(No. 24079.—

LOUIS C. REISCH, Trustee, Appellee, *vs.* HARRY W. BOWIE *et al.* Appellants.

*Opinion filed October 15, 1937.*

Jack McDonald, for appellants.

Whiteside & Vogt, for appellee.

Mr. Justice Wilson delivered the opinion of the court:

Louis C. Reisch, the trustee in bankruptcy of William D. Bowie, filed a complaint in the circuit court of Greene county against the latter's four children, Harry W., Janie and Julia Bowie, and Nellie Milnes. The complaint charged that within four months of the filing of the petition in bankruptcy against him and while insolvent, Bowie conveyed to the defendants, without consideration and in fraud of his creditors, certain real estate which, it was alleged, had a minimum value of $6000. The prayer of the complaint was that the conveyance be set aside and vacated as a cloud upon plaintiff's title. The defendants answered the complaint and the plaintiff filed a replication to their answer. The cause was referred to the master in chancery to take proof. He reported the testimony and the chancellor rendered a decree, granting the relief sought, except as to the property occupied as a homestead, ordered that the challenged conveyance, with the exception noted, be vacated and set aside, and further, that the defendants re-convey to plaintiff. This proceeding involves a freehold, and the

appeal properly lies to this court. *Banning* v. *Patterson,* 363 Ill. 464; *Daly* v. *Kohn,* 230 id. 436.

From the pleadings and the evidence these pertinent facts appear: William D. Bowie, on August 28, 1929, executed his note for $3400, payable to the Carrollton Bank, due three years after date, with interest at six per cent, and secured its payment by a mortgage on 223 acres of land near Berdan, in Greene county, and two lots improved by a residence in the city of Carrollton. The mortgaged property located in Carrollton was occupied by Bowie as his homestead. Bowie also owned two unencumbered lots in Carrollton which were improved by a residence. Default was made in the payment of the principal at maturity. Interest on the note, however, was paid to and including August 28, 1933. On October 24, 1933, Bowie executed another note to the Carrollton Bank for $618, due one year after date, with interest at seven per cent and secured its payment by an additional mortgage on the homestead property. The record disclosed other substantial obligations incurred by Bowie, among them his note, dated July 29, 1931, for $10,000, payable to the Greene County State Bank, due one year after date, with interest at six per cent, and another note, dated September 14, 1931, for $1500, payable to the State Bank of Eldred, due one year after date, with interest at six per cent. Both notes bore the endorsements of Howard Burns and S. Elmer Simpson as guarantors. On February 8, 1934, the attorney for Edith Burns, executrix of the will of her deceased husband, Dr. Burns, advised Bowie that the Greene County State Bank and the State Bank of Eldred had filed claims against Burns' estate upon the notes last mentioned, and that before allowance of the claims the executrix desired to find out what arrangement Bowie and Simpson could make for meeting their share of the obligations. Eight days later Bowie conveyed all his real estate in this State, namely, his farm and the two residential properties, to his four children, the deed reciting

that it was given subject to the mortgage to the Carrollton Bank. At the time of this conveyance Bowie was seventy-four years of age and afflicted with an incurable disease. On March 29, 1934, a similar deed from Bowie to his children, purporting to correct an error in description, was placed on record. This deed was made subject to the prior mortgage and also to a new mortgage executed the same day by Bowie to correct an error in description in the mortgage dated August 28, 1929. Both deeds stated a nominal consideration of five dollars. On April 29, 1934, the Greene County State Bank and the State Bank of Eldred obtained judgments by confession in the circuit court of Greene county for $12,815 and $1751, respectively, against Bowie on his notes guaranteed by Burns and Simpson. Within four months from the date of the conveyances by Bowie to his children, namely, June 15, 1934, the two banks and Edith Burns, as executrix, filed an involuntary petition in bankruptcy against Bowie in the district court for the Southern District of Illinois, Southern Division, and on July 12 he was adjudicated a bankrupt. Thereafter, Bowie filed his schedules in which he listed unsecured debts, including the judgment debts to the banks amounting to $19,724.75. The only assets scheduled were 480 acres of real estate situated in Arkansas, alleged to be worth $5000, and ten dollars worth of personal property consisting of wearing apparel. The value of the property scheduled was thus insufficient to discharge the unsecured claims.

The suit was instituted on November 23, 1934. By their answer the defendants denied the material allegations of the complaint. They averred that, to satisfy the demands of the Carrollton Bank and to avoid threatened foreclosure proceedings, their father conveyed his property to them in consideration of their assumption of the mortgage indebtedness, and, further, that they agreed not only with their father but also with the Carrollton Bank to pay and assume such indebtedness. The plaintiff replied that

the amount of the mortgages held by the Carrollton Bank represented only a comparatively small portion of the value of the property; that neither individually nor collectively were the defendants financially able to pay the mortgage indebtedness, so that their asserted agreement was without value and the bank would still be compelled to resort to the property itself for the payment of the indebtedness.

The parties concede that the homestead property was worth $1000 and that the other residence in Carrollton was worth $500. Evidence with respect to the value of the farm land conveyed, however, is conflicting. Witnesses, including one of plaintiff's attorneys, testified in behalf of plaintiff that the market value of the land on February 16, 1934, was $28 to $30 per acre. The attorney added that a client had authorized him to pay $6000 for it. A carpenter and contractor, familiar with the condition of the buildings on the farm, stated that, exclusive of labor, it would cost $4658.40 to replace them. He testified that the buildings were worth $2000 in their present condition. Harry Bowie, one of the defendants, the cashier of the Carrollton Bank and a neighboring farmer testified, on the other hand, that in their opinion the land was worth only $15 or $16 an acre. From the testimony of a fourth witness with respect to land values in Greene county it may be inferred that he considered the land in question worth $20 an acre at the time the conveyance was made. Harry Bowie also expressed the opinion that the farm and the homestead property were not worth as much, at the time of the conveyances under attack, as the mortgage indebtedness.

Additional facts and circumstances appear from the record. Harry Bowie testified that in a conference with the cashier of the Carrollton Bank the latter expressed satisfaction with the proposed transfer of the property to the witness and his sisters. From his testimony it appears that, with the single exception of his own household furniture,

neither he nor his sisters, Janie and Julia, had any property other than the real estate conveyed to them by their father on February 16, 1934. Julia Bowie, according to her brother, had been a dress-maker for twenty-five years, and Janie Bowie had, for a long period of time, received income from baking cakes. Bowie said that his third sister, Nellie Milnes, lived in Arkansas, and that, in his opinion, she was worth $2000 or $3000. He disavowed any intention on the part of himself and his sisters of defrauding any of their father's creditors. The cashier of the Carrollton Bank testified that none of the defendants had any property from which the bank could satisfy its claim but that the conveyances to them were, nevertheless, satisfactory to the bank, provided the children assumed the indebtedness which, he declared, they did. The assistant cashier of the bank testified that the bank had no security for the notes secured by the mortgages on the property in controversy excepting that the defendants had assumed their payment. He added that the bank looked to both the property and to the children for the payment of the indebtedness. The witness admitted, however, that the children were not worth the amount of the indebtedness; that they had no earning power to assist them in reducing the debt, and that the bank, so far as he knew, had nothing in writing showing the asserted assumption of the indebtedness. The evidence discloses that the defendants, after entering into possession of the property conveyed to them, sold timber from the farm and collected rents from the property. They, however, paid nothing on the indebtedness, either principal or interest. Harry Bowie explained that counsel had advised the defendants to make no payments until the bankruptcy proceedings were determined. The only evidence tending to show that at any time since the conveyance was made to them the defendants could have paid something on the mortgage indebtedness is the testimony of Harry Bowie, during the course of the trial

on July 30, 1935, that, if counsel would advise him so to do, he and his sisters in Carrollton could raise $600 or $700 to apply on the mortgage.

To obtain a reversal of the decree the defendants contend that the evidence fails to establish that the conveyance of February 16, 1934, and the subsequent correcting deed, were made with intent to hinder, delay or defraud their father's creditors. The applicable principles are well settled. Where a deed is made without consideration, or for a mere nominal consideration, and the grantor is at the time heavily indebted, the transaction will be deemed fraudulent, and may be impeached by creditors. (*Kennard* v. *Curran,* 239 Ill. 122; *Hauk* v. *VanIngen,* 196 id. 20; *Phelps* v. *Curts,* 80 id. 109.) A voluntary conveyance by a person largely indebted who shortly afterwards becomes insolvent may be set aside as in fraud of his creditors. Complete insolvency is not, however, requisite to render a voluntary conveyance void. (*Kennard* v. *Curran, supra; Hauk* v. *VanIngen, supra; Dillman* v. *Nadelhoffer,* 162 Ill. 625.) While fraud will not be presumed but must be proved, yet it cannot always be established by direct evidence and may be shown by proof of facts and circumstances from which the existence of the fraud charged may rightfully be inferred. (*Zwick* v. *Catavenis,* 331 Ill. 240.) Fraudulent intent sufficient to avoid a voluntary conveyance alleged to be fraudulent as against existing creditors may be ascertained from inference or from circumstances attending the transaction, such as the grantor's insolvency or great indebtedness compared with the amount of his property. (2 Pomeroy on Equity Jurisprudence, (4th ed.) sec. 971; *Hughes* v. *Noyes,* 171 Ill. 575.) Although a conveyance between parties related to each other by blood or marriage is not, of itself, fraudulent as against the grantor's creditors, (*Garrett* v. *Garrett,* 343 Ill. 577,) yet the fact of relationship may properly be considered in connection with other evidence tending to impeach the trans-

action. (*Zwick* v. *Catavenis, supra; Bartel* v. *Zimmerman,* 293 Ill. 154.) In particular, if a voluntary conveyance from a parent to a child results in hindering or delaying creditors, it will be regarded as fraudulent in law, irrespective of the honesty of the grantor's motives. *Marmon* v. *Harwood,* 124 Ill. 104.

In the light of the foregoing authorities it is manifest that the evidence was sufficient to establish that the conveyances from William D. Bowie to the defendants were made to hinder, delay or defraud his existing creditors. When the conveyances in question were made Bowie was largely indebted and his debts far exceeded his assets. The defendants were not among their father's creditors and they paid him nothing for either the original conveyance or the corrected deed. On the day the first contested conveyance was made the aggregate amount of principal and interest owing by Bowie to the Carrollton Bank was $4127.35. The homestead property was conceded to be worth $1000 and the other residence property, which was unencumbered, $500. The lowest valuation placed on the farm was $15 an acre and the highest, $30. Without detailing the conflicting testimony concerning the value of the farm it suffices to note that, in any event, its value, together with that of the property in Carrollton was considerably in excess of the mortgage indebtedness. The evidence conclusively demonstrates that in February, 1934, at least three of the defendants lacked means to satisfy the mortgage indebtedness against the property transferred to them. They argue, however, that they agreed to assume the mortgage and that such assumption constituted adequate consideration for the challenged transfer. Support for this argument rests largely on the testimony of the grantor's son, defendant Harry W. Bowie. The property was conveyed not only to the son but also to the three daughters, none of whom testified, and evidence is wanting that they personally agreed to pay any part of the mortgage indebtedness

to anyone. Nor is there any evidence tending to show that they authorized their brother to bind them to any verbal promise to pay or assume their father's indebtedness. Manifestly, the alleged verbal promise of the defendant Harry Bowie, admittedly unable, himself, to pay the mortgage debt, that he and his sisters, likewise unable to pay it, would assume the mortgage, was not a good and valuable consideration for this conveyance so far as the rights of existing creditors are concerned. The fact that the transfer may not have been objectionable to the Carrollton Bank is immaterial. The deeds assailed were not made to hinder, delay or defraud this particular creditor but other creditors whose claims were unsecured. Even if it be conceded that the son, at the time of the execution of the deed of conveyance to him and his sisters, verbally promised to pay the mortgage indebtedness to the Carrollton Bank, the concession cannot avail the defendants. The effect of the deeds assailed was unquestionably to remove all doubts of the grantor's solvency and ability to pay his creditors. The transfer of William D. Bowie's property, excluding the homestead property, was fraudulent in law and void as against pre-existing creditors.

Furthermore, the asserted promise on the part of Harry Bowie to pay his father's debt, not being in writing and duly signed, could not be enforced either at law or in equity by the father's creditors. (Smith-Hurd Stat. 1935, chap. 59, sec. 1; *Chilcote* v. *Kile,* 47 Ill. 88; *First Baptist Church* v. *Hyde,* 40 id. 150; *Scott* v. *Thomas,* 1 Scam. 58.) The action of the Carrollton Bank, the defendants and their father, after the original conveyance to them, indicates that there was no contract between the son and the bank founded upon a valuable consideration which might render the alleged promise one in the nature of an original undertaking. Shortly after the first conveyance a mistake was discovered in the legal description of the farm in the mortgage of August 28, 1929, as well as in the deed dated February 16,

1934. We observe that the grantor did not re-convey this property to the defendants by proper description and take their notes and mortgage, but, on the other hand, he executed another mortgage dated March 29, 1934, to further secure his note to the bank dated August 28, 1929, and, on the same day, delivered to defendants a corrected deed subject to the new mortgage given to the bank.

Our attention is directed to the fact that one of the attorneys representing plaintiff testified as to the value of the farm. We regret that it again becomes necessary to caution the bar that it is not good practice for an attorney to testify in a case in which he is employed as counsel. His testimony is not, however, incompetent, and the fact of his employment goes only to the weight of his testimony. *Crescio* v. *Crescio,* 365 Ill. 393; *Wollschlaeger* v. *Mix,* 364 id. 207.

The remaining contention of the defendants which requires consideration is, that a decree setting aside a deed upon the ground that it is void and a cloud upon the title of the plaintiff should not order a re-conveyance by the defendant. This point is well taken. The decree should stop with the setting aside of the deed. (*Schultz* v. *Schultz,* 274 Ill. 341; *Pratt* v. *Kendig,* 128 id. 293; *Rucker* v. *Dooley,* 49 id. 377.) The decree will accordingly be modified by striking therefrom that portion directing the defendants to re-convey the property to the plaintiff and, also, the alternative provision directing the master in chancery to make the re-conveyance in the event of the failure of the defendants so to do.

The decree of the circuit court, as modified, is affirmed.

*Decree modified, and affirmed.*